[No. 7084-1-III.   Division Three.   November 20, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. ROY BENJAMIN SOUTHERLAND, *Appellant.*

*Roy Benjamin Southerland,* pro se, and *Katherine Steele Knox,* for appellant (appointed counsel for appeal).

*C. J. Rabideau, Prosecuting Attorney,* and *Laurence S. Moore, Deputy,* for respondent.

MUNSON, J.—Roy B. Southerland appeals his convictions on one count of first degree burglary and three counts of second degree assault, contending the court erred in (1) failing to instruct the jury that first degree criminal trespass is a lesser included offense of first degree burglary; (2) failing to instruct that aiming a firearm is a lesser included offense of second degree assault; and (3) denying his motion for a new trial based on recanted testimony. Mr. Southerland contends, pro se, the court erred in (4) admitting his

statements to the officers during booking; (5) the giving of several jury instructions; (6) depriving him of the right to present an adequate defense; and (7) that his trial counsel was ineffective. We reverse and remand for a new trial.

The testimony would support the following facts. On the night of October 8, 1984, Mr. Southerland drove to the Pasco apartment of Debra Morris in search of his wife.[1] Ms. Morris answered the door; Mr. Southerland asked if his wife was there and if he could come in. After she responded negatively to both questions, Mr. Southerland pushed past her and entered anyway. Although Ms. Morris asked him to leave, he walked toward the bedroom door. When she attempted to stop him, he grabbed her arm, pushing her out of his way and up against a wall.

Bruno Harris, a friend of Ms. Morris who was present, began to stand up to assist her. He testified Mr. Southerland pointed a small pistol at him, telling him to stay out of his business and that he would kill anyone who attempted to interfere with his search. Mr. Harris testified Mr. Southerland also pointed the gun at Ms. Morris. Although she originally told the police he had threatened her with a gun, at trial Ms. Morris was unsure whether Mr. Southerland actually had one.

Entering the bedroom, Mr. Southerland discovered Garrett Harris, Bruno's brother. According to Garret, Mr. Southerland angrily accused him of consorting with his wife (Mrs. Southerland was, in fact, hiding in a bathroom adjacent to the bedroom). Garrett testified Mr. Southerland struck him and he felt what he believed to be a gun in Mr. Southerland's hand.

While Mr. Southerland was in the bedroom, Ms. Morris called the police who arrested him as he left the apartment following his unsuccessful search. During booking, Mr. Southerland asked whether charges would be filed against him if the witnesses did not show up at the trial. One of the

---

[1]Mr. and Mrs. Southerland apparently had a fight after which Mrs. Southerland fled to Ms. Morris' apartment.

booking officers responded that the witnesses would probably be arrested if they did not show up; Mr. Southerland stated he would see the witnesses did not testify.

On November 13, 1984, Bruno and Garrett Harris, at the instigation of Mrs. Southerland, signed notarized statements indicating they had lied in their original statements to the police about Mr. Southerland's actions in the apartment. However, at trial, the Harris brothers testified they did not read the statements before signing them and they signed the statements simply as a favor to Mrs. Southerland. Both testified their original police statements and trial testimony were truthful.

When Mrs. Southerland initially took the stand, she testified that the story about her husband forcibly entering the apartment and assaulting Ms. Morris and the Harris brothers was a lie, despite her contrary statements to the police. Following her testimony, the court indicated that it believed Mrs. Southerland may have perjured herself and ordered the prosecutor to take her into custody prior to charges being filed. After talking to a court appointed lawyer, Mrs. Southerland retook the stand and substantially changed her previous trial testimony, reconfirming her original statements to the police which implicated her husband.

The jury found Mr. Southerland guilty as charged on one count of first degree burglary and three counts of second degree assault. Mr. Southerland moved for a new trial based on a letter from Mrs. Southerland to the trial court, wherein she claimed her original trial testimony was truthful; she indicated in the letter she changed her testimony at trial because she was intimidated by the judge's order. The court denied the motion; this appeal followed.

■ Mr. Southerland initially asserts he was entitled to a jury instruction on first degree criminal trespass[2] as a

---

[2] RCW 9A.52.070(1) provides:

"A person is guilty of criminal trespass in the first degree if he knowingly enters or remains unlawfully in a building."

lesser included offense to first degree burglary.[3] A defendant is entitled to an instruction on a lesser included offense if (1) each of the elements of the lesser offense is a necessary element of the offense charged, and (2) the evidence supports an inference that the lesser crime was committed. *State v. Pacheco,* 107 Wn.2d 59, 68, 726 P.2d 981 (1986); *State v. Workman,* 90 Wn.2d 443, 448, 584 P.2d 382 (1978). The State admits the first or "legal" prong of the above test is met here; each of the elements of first degree criminal trespass is a necessary element of first degree burglary. *State v. Mounsey,* 31 Wn. App. 511, 517–18, 643 P.2d 892, *review denied,* 97 Wn.2d 1028 (1982).

■ The State argues, however, that the second or "factual" prong was not met here as the evidence does not support an inference the lesser crime was committed as Mr. Southerland denied entering or remaining in the apartment unlawfully. The State maintains *State v. Snider,* 70 Wn.2d 326, 327, 422 P.2d 816 (1967) stands for the proposition that Mr. Southerland's denial of committing either crime is insufficient evidence to support the giving of a lesser included instruction. *See also Pacheco,* at 69. However, *State v. Parker,* 102 Wn.2d 161, 166, 683 P.2d 189 (1984) provides:

> Regardless of the plausibility of this circumstance, the defendant had an absolute right to have the jury consider the lesser included offense on which there is evidence to support an inference it was committed. *State v. Jones,* 95 Wn.2d 616, 628 P.2d 472 (1981); *State v. Dowell,* 26 Wn. App. 629, 613 P.2d 197, *review denied,* 94 Wn.2d 1018 (1980).

*State v. Wilson,* 41 Wn. App. 397, 399, 704 P.2d 1217 (quoting *State v. Gottstein,* 111 Wash. 600, 602, 191 P. 766 (1920)), *review denied,* 105 Wn.2d 1003 (1985); *State v.*

---

[3]RCW 9A.52.020(1) provides:

"A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein."

*Jimerson,* 27 Wn. App. 415, 420, 618 P.2d 1027, *review denied,* 94 Wn.2d 1025 (1980).

At trial, Mr. Southerland contended Ms. Morris never told him not to enter the apartment, never tried to restrain him from entering, and never asked him to leave after he entered. He testified he neither had a gun when he entered nor assaulted anyone therein. Although his testimony was contradicted by Ms. Morris and the Harris brothers, given the facts of this case, there is some indication the jury may have found their testimony less than reliable. Thus, the jury could conceivably have believed some, if not all, of Mr. Southerland's testimony and found he committed first degree criminal trespass rather than first degree burglary. We conclude the trial court committed error by not giving the lesser included instruction. *Parker,* at 166; *State v. Jones,* 95 Wn.2d 616, 623, 628 P.2d 472 (1981); *State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718 (1973). Without the lesser included instruction, the jury was given the choice of either finding Mr. Southerland guilty of first degree burglary or nothing at all; such a choice, given the evidence presented in this case, was unacceptable. *Jones,* at 623; *State v. Colwash,* 15 Wn. App. 530, 532, 550 P.2d 57 (1976), *aff'd,* 88 Wn.2d 468, 564 P.2d 781 (1977). Consequently, we reverse and remand for a new trial. Because the remaining issues may arise again on remand, we comment briefly on Mr. Southerland's other assignments of error.

■ Mr. Southerland also argues the trial court erred in refusing to give his requested instruction of aiming or discharging a firearm as a lesser included offense to second degree assault. We disagree. Second degree assault (RCW 9A.36.020(1)(c)) requires the actor to: (1) knowingly assault another; (2) with a weapon or instrument or thing likely to produce bodily harm; and (3) under circumstances not amounting to assault in the first degree. The alleged lesser included offense of aiming a firearm (RCW 9.41.230) requires the elements of (1) aiming a firearm and (2) at or toward any human being. Neither a firearm nor the aiming of a firearm is a necessary or invariable element of second

degree assault; it is possible to commit second degree assault without also having committed aiming a firearm. Likewise, aiming a firearm is not an inherent characteristic of second degree assault. *See Workman,* at 448. Therefore, the court's failure to instruct the jury on aiming a firearm was not error. *Cf. State v. Partosa,* 41 Wn. App. 266, 273–74, 703 P.2d 1070, *review denied,* 104 Wn.2d 1017 (1985) (aiming or discharging a firearm is not a lesser included offense to second degree assault).

■ In a related argument, Mr. Southerland contends he was denied equal protection of the law as he was charged with second degree assault, rather than aiming a firearm. However, a denial of equal protection occurs only where the prosecutor has unfettered discretion to charge under either of two different statutes containing different penalties. *In re Taylor,* 105 Wn.2d 67, 68, 711 P.2d 345 (1985). No equal protection violation occurs where the offenses require different elements. *In re Taylor, supra* at 68. As noted above, the elements of second degree assault differ from the elements of aiming a firearm. Mr. Southerland was not denied equal protection.

■ Mr. Southerland next asserts the court erred in denying his motion for a new trial based on his wife's post-trial letter in which she recanted the second version of her trial testimony. The granting of a new trial upon recanted testimony rests within the sound discretion of the trial judge and will not be granted unless the five factors set out in *State v. Williams,* 96 Wn.2d 215, 222–23, 634 P.2d 868 (1981) have been met. *See also State v. York,* 41 Wn. App. 538, 543, 704 P.2d 1252 (1985); CrR 7.6(a)(3). The absence of any one of the *Williams* factors is grounds for denial of the motion for a new trial. *Williams,* at 223. Here, two of these factors are missing; the recantation would not have changed the result of the trial as the jury had already heard both versions of Mrs. Southerland's testimony; because of that fact, the recantation was also cumulative. We hold the court did not abuse its discretion in denying Mr. Southerland's motion for a new trial.

Mr. Southerland maintains pro se the court erred in admitting his statements made to the officers during booking because the order from the CrR 3.5 hearing was not signed. The record does not reveal the order, but does contain a signed copy of the findings of fact and conclusions of law in which the judge who heard the CrR 3.5 hearing (not the trial judge) ruled the statements were voluntarily made. At oral argument, the State noted the motion judge was unavailable to sign the order prior to trial; the content of the order is not challenged. We find no error.

Mr. Southerland next raises several assignments of error with respect to the court's instructions to the jury. Contrary to his contentions, the challenged instructions embody correct statements of the law. We find no error.

Mr. Southerland next asserts he was denied his due process rights to a fair trial by the court's alleged intimidating actions toward Mrs. Southerland following her original trial testimony. Here, Mrs. Southerland's trial testimony at first recanted her previous statements to the police. Then, after being provided counsel, during the trial she recanted that testimony. In a posttrial letter to the court, she recanted that version of her trial testimony and reverted to her original testimony. We doubt if this situation will arise on retrial, but find no error in the manner it was conducted in this trial as Mr. Southerland's rights were not prejudiced by the court's actions. The judge's order that Mrs. Southerland be taken into custody was made: (1) out of the jury's presence; (2) only *after* she had testified for the defendant in front of the jury; and (3) after he had warned her that she had a Fifth Amendment right not to answer incriminating questions.

Finally, Mr. Southerland argues he was denied effective assistance of counsel by his trial counsel's failure to raise the previously discussed pro se contentions. Our review of the record reveals his trial counsel's performance was not deficient and his defense was not prejudiced. *State v. Jeffries,* 105 Wn.2d 398, 418, 717 P.2d 722 (1986) (citing *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674,

104 S. Ct. 2052, 2064 (1984)).

The convictions are reversed and remanded for a new trial.

GREEN, C.J., and THOMPSON, J., concur.

Reconsideration denied December 18, 1986.

Review granted by Supreme Court March 4, 1987.