[No. 38649.    Department One.    March 2, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. KEITH MILTON RHINEHART, *Appellant*.*

*Reported in 424 P.2d 906.

*Malcolm L. Edwards,* for appellant.

*Charles O. Carroll, Robert E. Dixon,* and *J. Robert Walker,* for respondent.

HUNTER, J.—Keith Milton Rhinehart, defendant (appellant), was charged with sodomy in that he "did carnally know one James Guy Miller, a living human being and a male person, with the mouth and tongue; . . . ." RCW 9.79.100. He was found guilty as charged at the conclusion of a jury trial. Judgment and sentence was entered upon the jury verdict.

At the trial, 16-year-old James Miller, the main witness for the state, testified that at 1 a.m., the morning of April 11, 1965, he was summoned to the car of the defendant while he and two companions were on the streets of downtown Seattle. The defendant, driving a Cadillac convertible, asked Miller if he would like to earn some money and go to his place. Miller consented. The defendant then drove from downtown to his Capitol Hill apartment, which the witness Miller described as having a "monkey" tree in front of it. Miller also stated he noticed pictures of nude males in the defendant's apartment. Miller described furnishings of the

apartment as including wood carvings and a round bed. Miller testified that the defendant made indecent propositions to him to which he agreed. After the act (as described in the charge) was completed, the defendant drove Miller downtown to rejoin his companions, giving him a slip of paper with his phone number should Miller at a later time want to earn some more money. Miller and his two companions were later picked up by the police on a car prowling charge, which was dismissed on April 13, 1965. On April 14, 1965, Miller gave an account of his participation in homosexual acts with the defendant to Officer Von Allmen of the Seattle Police Department.

The defendant Rhinehart admitted meeting with Miller on the night in question, and stated he thought he recognized him as a member of his church; but denied that anything happened, as charged in the information. He stated that, as a minister of the Aquarian Foundation, a social reform group, he had studied all forms of sexual deviacy and on the night in question was trying to aid Miller, as an errant boy, with his problems. The defendant also claimed that Miller is a male prostitute who propositioned him as they were driving around the downtown area. Rhinehart, unequivocably, denied taking Miller to his apartment.

The jury by its verdict chose to believe the testimony of Miller. The defendant appeals.

The defendant first assigns error to the admission in evidence of the out-of-court statements given by Miller to the police. He contends these statements amounted to hearsay and could not be admitted so as to implicate him in the commission of the criminal offense charged. We disagree.

The record discloses that witness Miller gave two statements to the police, the second one repudiating an inconsistent version of the alleged crime given earlier to a Mrs. Lemmon, a friend of the defendant. At the trial the statement to Mrs. Lemmon was introduced by the defendant and was admitted for the purpose of impeaching the testimony of Miller on the stand. Thereafter, the chal-

lenged statements of the police were introduced to show that Miller's testimony was not a fabrication of recent date, and to rehabilitate the testimony of the witness after impeachment. The action by the trial court in admitting these statements was entirely consistent with the long-standing rule of *State v. Murley,* 35 Wn.2d 233, 212 P.2d 801 (1949), and *State v. Pitts,* 62 Wn.2d 294, 382 P.2d 508 (1963).

Counsel for the defendant has filed in this court an affidavit, by Miller, wherein he has changed his testimony at the trial, stating that he lied, and now denies the occurrence of the alleged crime. On this basis, the defendant moves the court for a remand of the case to the superior court for its consideration of a motion for a new trial. Miller's sworn testimony at the trial was corroborated by other evidence. Moreover, his post trial affidavit is, in essence, the same as his statement to Mrs. Lemmon. It is therefore cumulative. In view of this record, the remand would not be justified. The motion is denied.

The defendant assigns error to the ruling of the trial court in allowing the prosecutor to cross-examine the defendant with respect to various pictures of nude males and a magazine containing other pictures of men in the nude in the possession of the defendant. He contends that the fact of possession of materials, containing erotic or pornographic pictures, necessarily prejudiced the jury against him, since it would logically associate the possession of homosexual pornography to the likelihood of his committing the specific sexual act charged. The defendant, over objection, during cross-examination admitted these pictures were in his possession at the time of the alleged occurrence of the crime, stating they were given to him by his parishioners and were used in his study of deviate sexual behavior. The pictures themselves were not admitted in evidence.

Under the circumstances of this case, since the pictures referred to were found where the alleged sex crime was asserted to have been committed, it was proper for the jury to consider this testimony and to give to it whatever

weight it was entitled in light of all the evidence in the case. The testimony relative to the kind of pictures testified to as being observed by Miller was also admissible for the purpose of corroborating the evidence vital to the state, that Miller was in fact, as he testified, in the defendant's apartment. The trial court did not err in permitting the defendant's cross-examination as to the foregoing magazine and pictures.

■ The defendant contends the trial court erred in limiting the examination in his testimony relative to police contact with him prior to his arrest. By this testimony, the defendant hoped to show that Miller acquired knowledge of the contents of his apartment from either other homosexuals who had visited his home, or from the police who had contacted him there at times prior to his arrest. This was an attempt to inject hearsay testimony into the case. There was no direct testimony in the record to establish this theory. It was speculative and thus within the discretion of the trial court to limit the examination of the defendant in this regard.

The defendant assigns error to remarks made by the deputy prosecutor in his argument to the jury. These remarks tended to show that Miller had nothing to gain in telling the police of his participation in an act of sodomy with the defendant; since he was, by that time, cleared of the charge of car prowling and could only fear further confinement as the probable result of such an admission.

The defendant argues that release of the witness Miller from juvenile confinement could have depended completely upon the extent to which he would cooperate in giving a statement to aid in the arrest and conviction of the defendant. We think the argument to be without merit when considered with the testimony of Miller. He testified concerning the proceedings in juvenile court:

Well, we got picked up for car prowling, but a person who is car prowling, we both told the police officer that he [another person] was the one—the one who was car prowling, and he said that he was, *so the judge said that*

*we could go home. But then, I think it was the day after court, Officer Von Allmen came to see me about . . . .* (Italics ours.)

■ Defendant's theory of "connivance" is speculative and not supported by the record. The statements by the deputy prosecutor, based on competent evidence in the case, were therefore proper.

The defendant has assigned error to the denial of various post trial motions by the trial court. These, in large part, are based on constitutional arguments which we find to be inapplicable to the facts of this case or otherwise without merit.

The defendant contends that he was denied equal protection of the law since known homosexuals are permitted to participate in sexual activities in public bars and clubs in Seattle under the supervision and control of the police department, and with its direct knowledge and assent; and yet the defendant was singled out for prosecution in allegedly committing the same acts.

■ This contention is not a new one to this court, it being raised most recently in *State v. Reid,* 66 Wn.2d 243, 401 P.2d 988 (1965), and cases cited therein. We have repeatedly held that guilt or innocence cannot be made to depend on the question of whether other parties have or have not been prosecuted for similar acts. The failure of the state to prosecute others for the same or similar offenses is not a denial of due process or equal protection. The record shows that between 12 and 24 sodomy cases are filed annually in King County, and there is no merit to the defendant's contention that he was singled out for prosecution. On this point see *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L. Ed. 220, 6 Sup. Ct. 1064 (1886), and *Two Guys From Harrison-Allentown, Inc. v. McGinley,* 366 U.S. 582, 6 L. Ed. 2d 551, 81 Sup. Ct. 1135 (1961).

■ The defendant next contends that the sodomy statute, RCW 9.79.100, *supra,* is unconstitutional in that it purports to make criminal, private consensual acts which are not affected with sufficient public interest to be the

subject matter of the exercise of the police power of the state. There is no merit to this contention. The legislature has, by this enactment, considered the public interest served by it. The prohibition of the statute is a proper exercise of the police power. See *State v. Sears*, 4 Wn.2d 200, 103 P.2d 337 (1940); *McDermott v. State*, 197 Wash. 79, 84 P.2d 372 (1938).

■ The defendant further contends the sodomy statute, *supra*, is so vague that he was denied due process of law guaranteed to him by the fourteenth amendment to the constitution of the United States. We disagree. The statute (RCW 9.79.100) provides:

> Every person who shall carnally know in any manner any animal or bird; or who shall carnally know any male or female person by the anus or with the mouth; or tongue; or who shall voluntarily submit to such carnal knowledge; or who shall attempt sexual intercourse with a dead body, shall be guilty of sodomy . . . .

As such the statute gives fair notice of what acts will be punished. It specifically delineates ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the statute. *Winters v. New York*, 333 U.S. 507, 92 L. Ed. 840, 68 Sup. Ct. 665 (1948). See our recent decision on the void for vagueness problem in *Seattle v. Drew, ante* p. 405, 423 P.2d 522 (1967).

■ The defendant finally contends that the sodomy statute violates the establishment clause of the first amendment to the constitution of the United States, in that, those persons who hold a majority belief have imposed their ethics on others who follow homosexual practices. We see no merit to this contention. The Supreme Court of the United States answered this question as early as 1890, in *Davis v. Beason*, 133 U.S. 333, 342, 33 L. Ed. 637, 10 Sup. Ct. 299, when it stated:

> With man's relations to his Maker and the obligations he may think they impose, and the manner in which an expression shall be made by him of his belief on those subjects, no interference can be permitted, provided al-

ways the laws of society, designed to secure its peace and prosperity, and the morals of its people, are not interfered with. However free the exercise of religion may be, it must be subordinate to the criminal laws of the country, passed with reference to actions regarded by general consent as properly the subjects of punitive legislation.

This view has been consistently followed as to other practices conflicting with the criminal law. *Reynolds v. United States,* 98 U.S. 145 25 L. Ed. 244 (1878) (polygamy); and *State v. Massey,* 229 N.C. 734, 51 S.E.2d 179 (1949), appeal dismissed, *Bunn v. North Carolina,* 336 U.S. 942, 93 L. Ed. 1099, 69 Sup. Ct. 813 (1949), rehearing denied, 336 U.S. 971, 93 L. Ed. 1121, 69 Sup. Ct. 939 (1949) (snake worship); see general discussion in 16 C.J.S. *Constitutional Law* § 206 (2).

The judgment and sentence of the trial court is affirmed.

HILL, ROSELLINI, and HALE, JJ., and BARNETT, J. Pro Tem., concur.

May 3, 1967. Petition for rehearing denied.