[Nos. 14259-7-II; 14365-8-II.   Division Two.   March 16, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. PARIS
DARNELL LANDON, *Appellant*.

*In the Matter of the Personal Restraint of*
PARIS DARNELL LANDON, *Petitioner.*

*Michael J. Trickey* and *Appelwick, Trickey & Spicer,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn-Brintnall, Senior Appellate Deputy,* for respondent.

MORGAN, J. — Paris Landon was convicted of second degree assault while armed with a deadly weapon. He has now filed a personal restraint petition, as well as an appeal from the Superior Court's denial of a postjudgment motion for relief from judgment. We grant part of the relief sought in the petition.

On March 22, 1984, Landon came to Tacoma to purchase cocaine from Thurmond Mikes. He purchased $50 worth, then wanted to buy more. Mikes did not have more on hand, but he assured Landon that he could procure more by 2 p.m.

on March 24. Landon gave Mikes $600 with which to purchase the additional cocaine.

On March 24, Mikes failed to produce. That evening, Mikes received several angry phone calls from Landon. Mikes's version is that he did not know why Landon was angry, and he could not understand what Landon was saying due to background noise.

Shortly after midnight, Landon arrived at Mikes's house with another man. Mikes had gone to bed, but his wife was up watching television with several friends. The room was dark. She opened the door to find Landon and the other man close together in the doorway. She called for Mikes, and he came to the door. After some yelling, a third man suddenly appeared, and one of the three men pulled a gun on Mikes. Mikes pushed his wife out of the way and grabbed for the gun. Two shots were fired, and Mikes was hit in the chest and finger. Mikes ran to a neighbor's house, while Landon and the other men fled. Several shots were fired as they retreated into the night.

Mikes's wife did not see who had the gun, and Mikes initially told the police that he did not know who had shot him. At trial, the prosecutor said in his opening statement:

> Thurmond's not going to be able to tell you exactly who it is. Thurmond has his beliefs as to who he thinks it is, but he's not going to be able to say positively that he saw, because he didn't ....

When Mikes testified, however, he said he had since "visualized" the incident, and "In my vision, I say that Paris is the one that shot me."

Landon denied shooting Mikes. He testified that he did not know the other two men, and that they coincidentally arrived at the house at the same time he did. He testified that the second man was the one who shot Mikes. The record reflects nothing about the identity of the second or third man; neither was charged, and neither was called to testify.

The jury convicted Landon of second degree assault. It also made a special finding that he had been armed with a deadly weapon. On August 15, 1985, the trial court commit-

ted him to prison for an indeterminate sentence not to exceed 10 years.

Landon appealed, claiming the evidence was insufficient. Pending outcome of the appeal, he was released on bail. In July 1987, this court affirmed by unpublished opinion noted at 48 Wn. App. 1042. On October 6, 1987, the Washington Supreme Court denied review. 109 Wn.2d 1003. On February 22, 1988, the United States Supreme Court denied certiorari. *Landon v. Washington*, 484 U.S. 1064, 98 L. Ed. 2d 988, 108 S. Ct. 1023 (1988).

On March 17, 1988, Mikes met with Peter Lukevich, then a Rule 9 intern associated with defense counsel. The meeting, which apparently occurred at the University of Puget Sound student lounge, generated the following unsworn written statement:

> I, Thurmond Mikes, . . . of my own free will and volition and not being forced in any way or by anyone to include Mr. Paris Landon, without fear of reprisal or of any harm to myself or members of my family and realizing that his statement may be used to re-open the legal proceedings against Mr. Paris Landon, now wish to recant the testimony I provided during trial and now testify that I was not able to identify Mr. Paris Landon as the person who held or possessed a firearm at my residence on or about March 24, 1984.
>
> Furthermore, I now recant my testimony regards visualizing Mr. Paris Landon as the man holding the firearm and now testify that I did not visualize Mr. Paris Landon as the individual who had raised his hand and pointed a firearm in my direction on or about March 24, 1984.
>
> Thurmond Mikes, 3-17-88.
>
> Peter M. Lukevich, 3-17-88, witness

For reasons not apparent, there were no further court proceedings until November 30, 1989. On that date, Landon moved in the superior court for relief from judgment and new trial. He based his motion on Mikes's written statement. The Superior Court denied the motion on grounds it was time barred.

Landon began serving his sentence on December 8, 1989. However, the Superior Court again released him on bail in early 1990. About a year later, this court reversed that

ruling. As far as the record shows, Landon has been serving his sentence since that time.

When Landon reported to prison, the parole board[1] set his minimum term at 7½ years. The parole board reached this result by applying RCW 9.95.040, quoted and discussed below.

On July 20, 1990, Landon filed a personal restraint petition contending (1) that Mikes's written statement entitles him to relief; (2) that prosecutorial misconduct denied him a fair trial; and (3) that the parole board erred by applying RCW 9.95.040 to his case. On September 17, 1990, he filed an appeal from the denial of his November 1989 motion for relief from judgment.[2] The appeal duplicates the first contention in the personal restraint petition, and a commissioner of this court subsequently consolidated it with the personal restraint petition.

Landon's prosecutorial misconduct contention is meritless and will not be discussed further.[3] His first and third contentions are discussed separately below.

I

In both his personal restraint petition and his appeal from the Superior Court's denial of his postjudgment motion, Landon essentially contends that Mikes's written statement constitutes newly discovered evidence entitling him to relief. The first issue is whether his contention is time barred. The second issue is whether his contention has merit.

A

CrR 7.8(b) applies to postjudgment motions in superior court. In pertinent part, it provides that claims based on

---

[1]Before 1986, the parole board was known as the Board of Prison Terms and Paroles. In 1986, the Legislature "redesignated" it as the Indeterminate Sentence Review Board. Laws of 1986, ch. 224, §§ 2, 6. For convenience, we refer to it simply as the parole board.

[2]The Superior Court did not enter an appealable, written order denying the motion for relief from judgment until August 16, 1990.

[3]Landon never objected to the alleged misconduct at trial, and in any event, it did not abridge his right to a fair trial.

newly discovered evidence must be made "not more than 1 year after the judgment . . . was entered or taken". Landon brought his superior court motion for relief from judgment more than 1 year after judgment was entered or taken. Therefore, the Superior Court correctly held it was time barred in that court.

Although CrR 7.8(b) applies to postjudgment motions in superior court, RAP 16.4 applies to personal restraint petitions filed in the Court of Appeals. RAP 16.4 was first adopted in 1976. Since that time, it has empowered the Court of Appeals to grant "appropriate relief" pursuant to a personal restraint petition when

> Material facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government; . . .[.]

RAP 16.4(c)(3). Before September 1, 1991, it further provided, "The appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances." Former RAP 16.4(d); 86 Wn.2d 1244 (1976); 87 Wn.2d 1116 (1977). On and after September 1, 1991, it further provided, "The appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances and if such relief may be granted under RCW 10.73-.090, .100, and .130." RAP 16.4(d), 116 Wn.2d 1104 (1991). Insofar as pertinent here, RCW 10.73.090 requires that a personal restraint petition be brought within 1 year after judgment becomes final. RCW 10.73.100(1) provides that the 1-year limit does not apply to a petition based on newly discovered evidence, "if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion". RCW 10.73.130 provides that RCW 10.73.090 and RCW 10.73.100 apply "only to petitions . . . filed more than one year after July 23, 1989."

Landon filed his personal restraint petition on July 20, 1990. Under either RAP 16.4(d) as it then existed, or RAP

16.4(d) as it now exists, he was not required to meet the time requirements in RCW 10.73.090 or RCW 10.73.100(1). As it then existed, RAP 16.4(d) did not contain any time requirements. As it now exists, RAP 16.4(d) incorporates the time requirements of RCW 10.73.090 and RCW 10.73.100(1), but those requirements do not apply to petitions, such as Landon's, that were filed 1 year or less after July 23, 1989. RCW 10.73.130. We conclude that Landon's personal restraint petition is not time barred in this court.

## B

With regard to the merits, it is clear that Mikes's out-of-court written statement contains facts which, if true, are material. It is also clear that the facts in Mikes's written statement have not previously been heard on their merits by any court. Thus, the question is whether this court should grant relief "in the interest of justice", RAP 16.4(c)(3), and, if so, what relief is "appropriate" within the meaning of RAP 16.4(a).

■ Whether a defendant is entitled to relief due to the recantation of a witness varies according to whether the defendant was convicted solely on the testimony of the witness. "When a defendant is convicted *solely* on the testimony of the now recanting witness, this court has squarely held that it is an abuse of discretion not to grant a new trial." *State v. Rolax*, 84 Wn.2d 836, 838, 529 P.2d 1078 (1974), *overruled on other grounds in Wright v. Morris*, 85 Wn.2d 899, 540 P.2d 893 (1975); *to the same effect, State v. Powell*, 51 Wash. 372, 98 P. 741 (1909); *State v. York,* 41 Wn. App. 538, 543, 704 P.2d 1252 (1985). However, "when there exists *independent* evidence corroborating that of the witness who later seeks to recant his testimony, it is within the sound discretion of the trial court to determine whether to grant a new trial." *State v. Rolax*, 84 Wn.2d at 838; *see also State v. Shaffer*, 72 Wn.2d 630, 635, 434 P.2d 591 (1967).

■ We agree with Landon that he was convicted solely on the testimony of Mikes. Absent Mikes's testimony, a rational trier of fact could not have found beyond a reasonable doubt that Landon shot Mikes. Nor could a rational trier of fact

have found beyond a reasonable doubt that Landon was an accomplice, *i.e.*, that he knowingly aided or abetted one of the other men in shooting Mikes. *See* RCW 9A.08.020. Without Mikes's testimony, the evidence showed only that Landon was present at the scene, and mere presence is not enough for criminal liability. *In re Wilson*, 91 Wn.2d 487, 491-92, 588 P.2d 1161 (1979); *State v. Hystad*, 36 Wn. App. 42, 671 P.2d 793 (1983); *State v. Lozier*, 32 Wn. App. 376, 647 P.2d 535 (1982).

Emphasizing that his conviction was based solely on Mikes's testimony, but ignoring that Mikes has not yet recanted in open court, Landon argues that Mikes's unsworn out-of-court statement necessitates (1) outright dismissal of the case or (2) retrial pursuant to *State v. Rolax, supra, State v. Powell, supra*, and *State v. York, supra*. We disagree.

Landon's argument for outright dismissal is based on the double jeopardy clause. Landon argues in his petition,

> [T]he case must be reversed and dismissed for insufficiency of the evidence. Retrial would violate the double jeopardy clauses of the United States Constitution and the Washington State Constitution.

■ The double jeopardy clause bars retrial after a conviction is reversed due to insufficient evidence. *Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978); *Greene v. Massey*, 437 U.S. 19, 57 L. Ed. 2d 15, 98 S. Ct. 2151 (1978); *see also Hudson v. Louisiana*, 450 U.S. 40, 67 L. Ed. 2d 30, 101 S. Ct. 970 (1981). Here, however, Landon's conviction was based on *sufficient* evidence, as this court determined in 1987. Thus, the double jeopardy clause does not bar retrial, *see Lockhart v. Nelson*, 488 U.S. 33, 102 L. Ed. 2d 265, 109 S. Ct. 285 (1988), and it does not require outright dismissal.

Landon's argument for new trial rests on the assumption that Mikes's out-of-court written statement has the same legal effect as an in-court recantation made while under oath and subject to cross examination. That assumption is flawed.

■ To "recant" is "[t]o withdraw or repudiate formally and publicly." Black's Law Dictionary 1267 (6th ed. 1990) (citing *Pradlik v. State*, 131 Conn. 682, 685, 41 A.2d 906, 907 (1945)); *Webster's Third New International Dictionary* 1893 (1986). As seen above, the Washington courts have required a new trial when an essential witness recants under oath *in open court*. *Powell*, 51 Wash. at 373; *York*, 41 Wn. App. at 542; *Rolax*, 84 Wn.2d at 836 (hearing required where record unclear on whether recanting witness was essential). However, the Washington courts have never required that a new trial be granted on the basis of an unsworn *out-of-court* statement. On the contrary, they have approved the *denial* of a new trial when a witness has "recanted" by means of an unsworn out-of-court statement, *State v. Southerland*, 45 Wn. App. 885, 891, 728 P.2d 1079 (1986), *aff'd in part*, 109 Wn.2d 389, 745 P.2d 33 (1987); *State v. Alvarez*, 45 Wn. App. 407, 415, 726 P.2d 43 (1986), *review denied*, 107 Wn.2d 1022 (1987),[4] and other jurisdictions are in accord. *Sims v. State*, 195 Ga. App. 631, 632, 394 S.E.2d 422, 424 (1990) (unsworn letter insufficient to constitute recantation); *People v. Bova*, 122 A.D.2d 798, 800, 505 N.Y.S.2d 885 (1986) (unsworn letter insufficient to constitute recantation); *United States v. Baxter*, 733 F.2d 1443, 1445 (11th Cir. 1984) ("new evidence" given "orally and while not under oath"); *cf. State v. Sena*, 105 N.M. 686, 687, 736 P.2d 491, 492 (1987) (one factor related to recantation is whether witness "admitted her perjury on the witness stand"). Following these authorities, we hold that an unsworn out-of-court statement is not the equivalent of an in-court recantation, and that such a statement does not trigger the new trial requirements of *Rolax*, *Powell*, and *York*, even where the testimony of the person making the statement was the sole basis for the defendant's conviction.

■ Although Landon is not entitled to relief in the nature of a dismissal or new trial, we think he is entitled to relief in the

---

[4]Additionally, the Washington courts have approved, under certain circumstances, the denial of a new trial when a witness has "recanted" by affidavit. *E.g.*, *State v. Snyder*, 199 Wash. 298, 91 P.2d 570 (1939); *State v. Wynn*, 178 Wash. 287, 34 P.2d 900 (1934).

nature of a hearing in superior court to determine whether Mikes will recant in open court while under oath and subject to cross examination. As seen above, RAP 16.4(c)(3) requires (1) material facts, (2) not previously heard, which (3) make relief appropriate "in the interest of justice". The facts in Mikes's statement are clearly material; they have not yet been heard in court; and if Mikes were to reiterate them in open court while under oath and subject to cross examination, *Rolax, Powell,* and *York* would require a new trial. Thus, it is our view that a hearing in superior court constitutes "appropriate relief " within the meaning of RAP 16.4(c)(3).

We emphasize that we order a hearing only because of the peculiar nature of Mikes's original testimony, and the particular circumstances under which his unsworn out-of-court statement was later obtained. The prosecutor said in opening statement that Mikes would not be able to identify Landon, but Mikes testified that he had had a "vision", because of which "I say that Paris is the one that shot me." Mikes's out-of-court statement was taken by a legal professional in a public place, so it is arguable that coercion and improper influence were somewhat less likely than in many cases involving postconviction statements by victims. In short, Mikes's trial testimony bears some indicia of unreliability, his out-of-court statement bears some indicia of reliability, and in light of this unusual combination of circumstances, a hearing is warranted.

Concluding this part of our discussion, we transfer Landon's personal restraint petition to superior court, pursuant to RAP 16.12.[5] That court shall determine whether Mikes will recant in open court. Landon shall be allowed to issue a subpoena for Mikes and, if Mikes can be served, to examine Mikes at a hearing at which Mikes is under oath and the State is permitted to cross-examine. If the Superior Court finds[6] that Mikes has recanted his trial testimony in open

---

[5]The transfer is for a "determination on the merits", rather than for a "reference hearing". *See* RAP 16.12.

[6]The superior court shall enter findings and conclusions, as required by RAP 16.12.

court, it shall vacate the conviction and grant a new trial pursuant to *Rolax, Powell* and *York*. Otherwise, it shall dismiss the personal restraint petition with prejudice. Landon bears the responsibility for locating and producing Mikes in open court,[7] and Landon's conviction remains binding and effective unless and until the Superior Court finds it should be vacated.

## II

Landon argues that RCW 9.95.040 does not apply to his case. He also argues that even if RCW 9.95.040 applies, the parole board was required to apply it in a manner reasonably consistent with the presumptive ranges in the Sentencing Reform Act of 1981, RCW 9.94A.

## A

Washington has two sentencing schemes for felonies. In general, the SRA applies to felonies committed on or after July 1, 1984, RCW 9.94A.905, but the preexisting scheme applies to felonies committed before that date. RCW 9.95-.900; RCW 9.94A.905; *see In re Hunter*, 106 Wn.2d 493, 497, 723 P.2d 431 (1986). Landon having been convicted for a crime committed in March 1984, the preexisting scheme applies here.

Under the preexisting scheme, both a maximum and minimum term is set for each person sentenced to prison. Laws of 1955, ch. 133, §§ 2, 5. The maximum term is not in issue here.[8]

Before July 1, 1986, the minimum term was set by the parole board, subject to certain limitations.

> Within six months after the admission of a convicted person to the penitentiary . . . , the board of prison terms and paroles shall fix the duration of his confinement. . . .
> The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:
> (1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of

---

[7]This statement is not intended to diminish whatever rights Landon otherwise might have to assistance at public expense.

[8]For provisions governing the maximum term, see RCW 9.95.010.

his offense, the duration of confinement shall not be fixed at less than five years.

(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

Former RCW 9.95.040; Laws of 1975, 2d Ex. Sess., ch. 63, § 2; *see also* Laws of 1955, ch. 133, § 5.

In 1986, the Legislature transferred to the sentencing court the responsibility for setting the minimum term in pre-SRA cases in which the offender was committed to prison after July 1, 1986. However, it left with the parole board the responsibility for setting the minimum term in pre-SRA cases in which the offender was committed to prison before July 1, 1986. Laws of 1986, ch. 224. Section 7 of that session law enacted RCW 9.95.011:

When the court commits a convicted person to the department of corrections on or after July 1, 1986, for an offense committed before July 1, 1984, the court shall, at the time of sentencing or revocation of probation, fix the minimum term.

Section 9 of the same session law amended RCW 9.95.040 by inserting the language shown in italics:[9]

*The board shall fix the duration of confinement for persons committed by the court before July 1, 1986, for crimes committed before July 1, 1984.* Within six months after the admission of the convicted person to the penitentiary, . . . the board shall fix the duration of his confinement. . . .

The following limitations are placed on the board *or the court for persons committed to prison on or after July 1, 1986, for crimes committed before July 1, 1984,* with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence:

(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

---

[9]Section 9 also amended RCW 9.95.040 in other ways not pertinent here.

■ Although Landon argues to the contrary, our view is that these sections establish an unambiguous, comprehensive scheme for pre-SRA felonies, *i.e.*, felonies committed before July 1, 1984. The court is to set the maximum term and the board is to set the minimum term in pre-SRA cases in which the offender is "committed to prison" before July 1, 1986. The court is to set both the maximum term and the minimum term in pre-SRA cases in which the offender is "committed to prison" on or after July 1, 1986. The entity setting the minimum term, regardless of whether it is the board or the court, must set the minimum term at not less than 5 years for a person not previously convicted of a felony but armed with a deadly weapon at the time of the present offense, and at not less than 7½ years for a person previously convicted of a felony and armed with a deadly weapon at the time of the present offense.

Even if we assume the second paragraph of section 9 is ambiguous, we reach the same result. If the phrase "for persons committed to prison on or after July 1, 1986," modifies only the word "court", the paragraph means, "The following limitations are placed on the board, and on the court for persons committed to prison on or after July 1, 1986, notwithstanding any provisions of law specifying a lesser sentence."[10] If the phrase "for persons committed to prison on or after July 1, 1986," modifies the word "board" as well as the word "court", the paragraph means, "The following limitations are placed on the board for persons committed to prison on or after July 1, 1986, and on the court for persons committed to prison on or after July 1, 1986, notwithstanding any provisions of law specifying a lesser sentence." If the first meaning is correct, the limitations of RCW 9.95.040 continue to govern in all pre-SRA cases, just as they did before the 1986 legislation; whether a pre-SRA offender is committed to prison before or after July 1, 1986, is material with regard to which entity sets the minimum term, but not with regard to the duration of that term. If the second meaning is correct, the limitations of RCW 9.95.040 apply in

---

[10]In this sentence and the preceding one, we intentionally omit the phrase "for crimes committed before July 1, 1984". That phrase merely makes Laws of 1986, ch. 224, § 9, part of Washington's pre-SRA sentencing scheme.

pre-SRA cases in which the offender is committed to prison on or after July 1, 1986, but not in pre-SRA cases in which the offender was committed to prison before July 1, 1986.

██ Assuming ambiguity, we must resolve it in accordance with the intent of the Legislature. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990); *State v. Wilbur*, 110 Wn.2d 16, 18, 749 P.2d 1295 (1988). We can easily perceive why the 1986 Legislature would have intended the first meaning, for its result is that all pre-SRA offenders will be treated equally, and Laws of 1986, ch. 224 will not create a disparate situation in which the limitations of RCW 9.95.040 apply to pre-SRA offenders whose minimum terms are set by the board, but not to pre-SRA offenders whose minimum terms are set by the court. We can perceive no reason why the 1986 Legislature would have intended the second meaning, for to apply the limitations of RCW 9.95.040 to pre-SRA offenders committed to prison after July 1, 1986, but not to pre-SRA offenders committed to prison before that date would create a scheme for pre-SRA minimum terms that is irrational and at least arguably unconstitutional. For these reasons, it appears to us that the 1986 Legislature intended the first meaning.[11] Thus, we construe the second paragraph of section 9 as having that meaning, and we conclude that the board did not err when it applied RCW 9.95.040 in this case.

## B

██ Landon also contends that even if RCW 9.95.040 applies, RCW 9.95.009(2) mitigates its effect. RCW 9.95.009 provides in pertinent part:

(2) After July 1, 1984, the board shall continue its functions with respect to persons convicted of crimes committed prior to

---

[11]We note in passing that this view of legislative intent does not offend the rule of lenity, upon which Landon relies. That rule often requires that an ambiguous statute be construed in favor of the defendant in a criminal case. *State v. Martin*, 102 Wn.2d 300, 304, 684 P.2d 1290 (1984). The overall goal, however, is to carry out legislative intent, *State v. Hartley*, 41 Wn. App. 669, 673, 705 P.2d 821, *review denied*, 104 Wn.2d 1028 (1985), and thus the rule applies only when its application would not yield a result "clearly contrary to legislative intent." *State v. Vinge*, 59 Wn. App. 134, 140, 795 P.2d 1199 (1990), *review denied*, 116 Wn.2d 1006 (1991); *State v. Kenney*, 52 Wn. App. 193, 194, 758 P.2d 989 (1988). Here, the Legislature's intent is clear, and the rule of lenity does not require contravention of that intent.

July 1, 1984, and committed to the department of corrections. When making decisions on duration of confinement . . . the board shall consider the purposes, standards, and sentencing ranges adopted pursuant to RCW 9.94A.040 and the minimum term recommendations of the sentencing judge and prosecuting attorney, and shall attempt to make decisions reasonably consistent with those ranges, standards, purposes, and recommendations[.]

In the ordinary case, this statute requires the board to consider and impose sentences reasonably consistent with the appropriate SRA standard range. *In re Myers,* 105 Wn.2d 257, 714 P.2d 303 (1986); *Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 730 P.2d 1327 (1986). Here, then, Landon says that the board was required to set his minimum term within the SRA's presumptive range for his offense, even if RCW 9.95.040 applies.

This argument fails. In *In re Hunter,* 106 Wn.2d 493, 497-98, 723 P.2d 431 (1986), the Washington Supreme Court held that RCW 9.95.040 controls when it applies, and that RCW 9.95.009 does not lessen its effect.

In conclusion, we transfer to superior court the personal restraint petition claim based on Mikes's written statement. We dismiss with prejudice the personal restraint petition claims based on prosecutorial misconduct and RCW 9.95-.040. We affirm the Superior Court's order denying the motion for relief from judgment.

ALEXANDER, C.J., and PETRICH, J., concur.

Reconsideration denied May 18, 1993.