[No. 32579-5-1. Division One. June 26, 1995.]

THE STATE OF WASHINGTON, *Respondent* v. LEONARDO S. EDER, *Appellant*.

---

*John Richard Quirk*, for appellant.

*Brenda Louise Bannon*, for respondent.

BECKER, J. — Three years after a jury convicted Leonardo Eder of second degree child rape, his stepdaughter recanted the testimony that supported the conviction. Eder appeals from the denial of his personal restraint petition in which he sought a new trial. We hold that recantation testimony, a form of newly discovered evidence, warrants a new trial only if it is material; it is material only if it is true; and therefore the trial court did not err in making a threshold determination as to its credibility.

## I

At his trial in 1989, Eder's stepdaughter Christine testified that he raped her one afternoon when she came home from her special education classes. Eder was home alone because it was his regular day off work. He followed 12-year-old Christine upstairs to her bedroom, put her on her bed and removed her clothing. She tried to escape and told Eder to leave her alone. He raped her and then ordered her to shower. Christine said nothing to her mother, Eder's wife, because she was afraid of Eder, but she later told her aunt about it while explaining bruises that resulted from Eder beating her with a fireplace shovel.

Eder admitted assaulting Christine with the shovel, but denied the rape. He was convicted on both counts and sentenced to prison.

The posttrial record reflects that after Christine's

disclosures, her mother refused to have Eder move out of the house. Christine moved out instead and lived with relatives. The mother and other family members continued to tell Christine that they did not believe she had been sexually assaulted. Christine eventually told her mother she wanted to move back home with her. Christine's mother said Christine could move back home if she changed her testimony.

In 1992, Christine, under oath, recanted her trial testimony concerning the rape in a transcribed interview with Eder's attorney. Shortly thereafter, her mother permitted her to move back home, in violation of a juvenile court dependency order.

Eder moved for a new trial, submitting the transcript of Christine's recantation as newly discovered evidence. His motion was treated as a personal restraint petition. The trial court, at this court's direction, conducted a hearing on the merits under RAP 16.12 in March 1993.

At the hearing, having been advised of the penalties for perjury, Christine testified that she had made up everything she previously said about Eder having sex with her. She said the reason she made up the story was that she was afraid to go home and feared Eder would hit her again. She denied that anyone had promised her anything in return for her present testimony.

The court also heard testimony from Christine's mother, her aunt, her grandmother, and her cousin. A social worker related a visit in 1991 during which Christine, upset and crying, said that her family did not believe the allegations of sexual abuse she had made in 1988 and wanted her to change her mind about it.

Christine's therapist testified at length. She diagnosed Christine with depression and posttraumatic stress disorder and treated her from August 1990 to June 1992. Christine never recanted to her therapist. Several times, Christine told the therapist that her mother said she would kill herself if Eder stayed in prison. Christine also talked of suicide as an option for herself. She felt grief,

confusion and anger as a result of her family's efforts to get her to change her story. She had repetitive nightmares of Eder coming to get her. Christine told the therapist she had not reported the sexual abuse because Eder, holding a gun, had threatened to kill her and help her commit suicide. The therapist also reported receiving a telephone call from Christine's grandmother during which the grandmother, expressing doubt about Christine's story, asked whether Christine might have suggested in therapy that she made the story up. Therapy ended when Christine quit coming to her weekly appointments.

Based on all the testimony, the court found that Christine's mother and most of Christine's family never believed she was a victim of sexual assault. The court found that family pressure coerced Christine into recanting her original trial testimony.

The court took into consideration the five requirements that determine whether newly discovered evidence warrants a new trial. These are: "(1) the evidence must be such that the results will probably change if a new trial were granted; (2) the evidence must have been discovered since the trial; (3) the evidence could not have been discovered before the trial by exercising due diligence; (4) *the evidence must be material and admissible*; and (5) the evidence cannot be merely cumulative or impeaching".[1] The absence of any one of the five factors is sufficient to deny a new trial.[2]

The court found that Christine's recantation testimony was not credible. The court concluded that the defense had not met its burden of demonstrating the truthfulness of the recantation by a preponderance of the evidence. The recantation was not material, the court concluded, because "recantation evidence only constitutes a material fact if true". Also, since Eder did not meet his burden of

---

[1](Emphasis added.) *State v. Davis*, 25 Wn. App. 134, 138, 605 P.2d 359 (1980); *State v. Harper*, 64 Wn. App 283, 291-93, 823 P.2d 1137 (1992).

[2]*State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981).

showing the recantation evidence was true, he did not show it would probably change the result at a new trial.

## II

On appeal, Eder contends the trial court exceeded its authority when it made a determination as to Christine's credibility at the hearing on the merits. He argues that credibility of recantation testimony is an issue for the jury, which alone has the power to decide what evidence to believe.

At the outset, we reject Eder's argument that the trial court's action denied his right to a trial by jury. The reason is simple: Eder had a jury trial. His appeal is subject to the rules for newly discovered evidence after trial.

Eder's better-supported argument is that the trial court was obligated to grant a new trial because Eder could not have been convicted of rape without Christine's original testimony, testimony she now asserts was untrue.

A number of cases, summarized in the leading case of *State v. Rolax*,[3] have developed the rules to apply when newly discovered evidence appears in the form of a recanting witness. It is well settled that the trial court has the discretion to deny a new trial where independent evidence corroborates the original testimony of the witness at trial.[4] But this corroborating evidence must be sufficient in itself to "justify a conviction and penal sentence".[5] If independent corroboration is lacking and the defendant is

---

[3]*State v. Rolax*, 84 Wn.2d 836, 529 P.2d 1078 (1974), *overruled on other grounds in Wright v. Morris*, 85 Wn.2d 899, 540 P.2d 893 (1975).

[4]*State v. Rhinehart*, 70 Wn.2d 649, 652, 424 P.2d 906, *cert. denied*, 389 U.S. 832 (1967); *State v. Wynn*, 178 Wash. 287, 288-90, 34 P.2d 900 (1934); *see also State v. Shaffer*, 72 Wn.2d 630, 635, 434 P.2d 591 (1967).

[5]*State v. Powell*, 51 Wash. 372, 374, 98 P. 74 (1909).

convicted solely on the testimony of a now recanting witness, it is an abuse of discretion not to grant a new trial.[6]

We do not agree with the State that the testimony at Eder's trial supported Eder's conviction independently of Christine's testimony. Eder's admission that he beat Christine with a shovel related to the assault charge and did not corroborate the rape. Evidence that Christine feared Eder did no more than explain why she delayed reporting; the conviction could not have rested solely on her fear. The testimony of those witnesses to whom Christine made her disclosures merely repeated Christine's trial testimony, which her more recent testimony has directly repudiated.

To conclude that Eder's conviction rests solely on Christine's testimony does not, however, necessarily compel a new trial as Eder contends. *Rolax* establishes the trial court's obligation to make a threshold determination as to the materiality of recantation testimony. In doing so, the court must determine if the testimony is true: "the allegation . . . that the complaining witness perjured himself, *if true, may constitute a material fact. . . .* [N]ew evidence *may, if true,* constitute a material fact and thus be grounds for granting a new trial".[7]

In *Rolax*, the court could not ascertain whether the petitioner had been convicted of second-degree assault solely on the basis of the later-recanted testimony or whether there was independent corroborating evidence. The Supreme Court left this determination to the trial court and remanded the case for a hearing on the merits: "After a hearing on the merits of the claim, *that court shall determine whether the testimony was, in fact,*

---

[6]*Rolax*, 84 Wn.2d at 838; *Powell*, 51 Wash. at 374-75; *State v. Landon*, 69 Wn. App. 83, 90, 848 P.2d 724 (1993); *State v. York*, 41 Wn. App. 538, 543, 704 P.2d 1252 (1985).

[7](Emphasis added and in original.) *Rolax*, 84 Wn.2d at 838.

*perjured* and, if so, whether the jury's verdict of guilty was likely to be influenced thereby".[8]

■ This court's interpretation of *Rolax* in the later case of *State v. Davis*[9] confirms that a trial judge must weigh the credibility of a witness whose recantation testimony is offered in a setting of collateral attack upon a conviction. This obligation is the same in a hearing on the merits of a personal restraint petition under RAP 16.12 and in a motion for a new trial under CrR 7.6 based on newly discovered evidence.[10] The *Davis* court restated the directive in *Rolax*: "in determining what effect the newly discovered evidence might have on a future trial, the trial court is required to determine the weight and sufficiency of the evidence, as well as credibility".[11]

Eder suggests *Davis* is an aberration because it allows the trial court to replace the jury as the trier of fact. We disagree.

The principal case supporting Eder's argument is *State v. York*.[12] In *York*, the defendant moved for a new trial alleging the nine-year-old victim of indecent liberties had recanted her trial testimony. The trial court declined the State's request to enter a finding as to whether the child had perjured herself at trial, stating that case law prevented it from making such a finding.[13] The trial court found the conviction was based solely on the recanted testimony and granted a new trial. On appeal, the State relied, as it does in this case, on the direction to the trial court in *Rolax* to determine first whether the trial testimony was perjured. The Court of Appeals neverthe-

---

[8](Emphasis added.) *Rolax*, 84 Wn.2d at 838.

[9]*State v. Davis*, 25 Wn. App. 134, 605 P.2d 359 (1980).

[10]*Davis*, 25 Wn. App. 137-38.

[11](Emphasis added.) *Davis*, 25 Wn. App. at 139; *see also In re Merritt*, 69 Wn. App. 419, 424-25, 848 P.2d 1332 (1993).

[12]*State v. York*, 41 Wn. App. at 538; *see also State v. Landon*, 69 Wn. App. 83, 90-94, 848 P.2d 724 (1993).

[13]*York*, 41 Wn. App. at 543.

less affirmed on the basis that the trial judge could not be permitted to invade the jury's fact-finding function. The *York* court reasoned that the remand for a credibility determination in *Rolax* was permitted only because it was possible in *Rolax* that the conviction rested on other evidence besides the recanted testimony. Because no independent corroborating evidence existed to support York's conviction, the court concluded the trial court had no obligation to weigh credibility.[14]

 We do not read *Rolax* to be so limited. If the trial court's sole purpose on remand in *Rolax* had been to discover whether or not independent corroborating evidence existed, there would be no reason for it to evaluate the credibility of the recantation. The requirement that recantation testimony be material demands that the trial court in all cases decide whether, more probably than not, it is credible. The existence of independent corroborating evidence might make the determination easier, but the absence of corroborating evidence does not relieve the trial court of its threshold responsibility.[15]

 The rules to be derived from this discussion are as follows: If the recantation testimony is credible, but independent corroborating evidence supported the conviction, the trial court may grant a new trial or not, in its discretion. If the recantation testimony is credible, and no independent corroborating evidence supported the conviction, the court *must* grant a new trial according to the rule originating in *State v. Powell* and reiterated in *Rolax*. If the recantation testimony is not credible, then it is not material, and it does not provide a basis for granting a new trial.

To the extent York holds otherwise, we disagree with it.[16] As early as 1934, the Washington Supreme Court

[14]*York*, 41 Wn. App. at 545-46.

[15]*See Rolax*, 84 Wn.2d at 838.

[16]*Accord Brown v. State*, 816 P.2d 818, 822 (Wyo. 1991) (criticizing *York*).

explained that recantation evidence is inherently questionable:

> Recantation by an important witness of his or her testimony at the trial does not necessarily, or as a matter of law, entitle the defendant to a new trial. The determination of such matters rests in the sound discretion of the trial court, and its action will not be set aside except for clear and manifest abuse.
>
> . . . .
>
> The untrustworthy character of recanting testimony is well known by those experienced in the trial of criminal cases, and when such testimony is offered, it calls for a rigid scrutiny. When the trial court, after careful consideration, has rejected such testimony, or has determined that it is of doubtful or insignificant value, its action will not be lightly set aside by an appellate court.[17]

These observations are particularly apt as applied to a sex crime involving a family member. Eder's position is that a new trial should be automatically available when an offender has obtained his victim's recantation. This case exemplifies the coercive pressure and manipulation that would be the certain result of such a rule.

The judgment is affirmed.

BAKER, C.J., and KENNEDY, J., concur.

Review denied at 129 Wn.2d 1013 (1996).

---

[17]*Wynn*, 176 Wash. at 288-89.