[Nos. 17166-0-II; 17854-1-II. Division Two. February 2, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. SHELLEY SUE SMITH, *Appellant.*

*In the Matter of the Personal Restraint of* SHELLEY , SUE SMITH, *Petitioner.*

*Robert W. Huffhines, Jr.*, for appellant (appointed counsel for appeal).

*Shelley S. Smith*, pro se.

*James J. Stonier, Prosecuting Attorney*, and *Winniferd A. Clements, Deputy*, for respondent.

SEINFELD, C.J. — Shelley Sue Smith appeals her convictions for the attempted first degree murder of her fiancé, James Jeffers, and for conspiring to commit the first degree murder of her ex-husband, David Smith.[1] Jeffers testified against Smith, but later recanted and pleaded guilty to perjury. Smith seeks a new trial because of Jeffers's recantation. She also assigns error to the information and to certain jury instructions. We find no error but remand for a determination of whether the recantation requires a new trial.

## FACTS

Smith and her ex-husband, David Smith, had an ongo-

---

[1]Smith also filed a personal restraint petition/pro se brief, which this court consolidated with her appeal.

ing custody dispute regarding K, their three-year-old daughter. Smith's mother, Marjorie Franklin, blamed David for all of Smith's problems and frequently expressed her intense hatred for him.

Smith and Franklin apparently agreed that eliminating David would solve Smith's custody problem. Beginning in mid-1990, Franklin sought the assistance of a friend, Reneé Spencer. She asked if Spencer knew anyone who would kill David and offered $500. Spencer indicated that she did not.

A year later, after David expressed his concern that K had been sexually abused, Franklin became enraged and asked Spencer again if she knew anyone who would kill David. Sometime later she increased the offer to $1,500 and said that she would "put her house up" if someone would "take care of him." Spencer refused. Upon Spencer's refusal, Smith angrily retorted she would "do it herself."

Jeffers testified that Franklin and Smith also had asked him to kill David or to find someone who would. He refused, but offered acquaintances Wayne Mastrionni and Mike Hendrickson $500 of Franklin's money to do it. In October 1991, Smith wrote Jeffers a letter in which she referred to her request that Jeffers kill David. Jeffers later gave the letter to the police, and at trial Smith stipulated that she had written it.

In early November 1992, Jeffers threatened to report Smith to Child Protective Services because of her continued drug abuse. Smith was concerned that this might hurt her chances to obtain a favorable ruling at a pending custody hearing. She responded by plotting with Randall Dills, another of her fiancés, to eliminate Jeffers.

Late on Thanksgiving day, Jeffers went to Smith's apartment where the two engaged in an angry discussion. They then left in Jeffers's car, traveling to various locations in the community. During that time, Smith made at least three phone calls to Dills imploring him to "take care of [Jeffers] right there."

During the last call, Smith and Dills agreed to a plan

that they then carried out. Smith drove Jeffers to a site on a remote wooded logging road. Dills had marked the place where Smith was to stop by placing a Pepsi cup on the side of the road. Once there, Smith left the car and motioned for Dills, who was standing nearby, to come closer. She then ordered Dills to shoot Jeffers. Dills used a shotgun to fire at Jeffers, who was seated in the car. After Jeffers got out of the car, Dills fired two more shots, wounding Jeffers seriously. Dills testified that Smith kept encouraging him to shoot again, but he had brought only three shells.

Jeffers was able to get back in the car and drive to a nearby cafe to summon aid. Jeffers exclaimed to paramedics and police at the scene that "Randy Dills shot me and Shelley Smith set me up." Meanwhile, Dills drove Smith to a bushy site where Smith disposed of the gun. Dills later described the location and police recovered the shotgun based on his description.

Following Smith's arrest, she gave a written confession, admitting that she lured Jeffers to the site knowing that Dills would be waiting there to kill him. During numerous interviews with police, Jeffers confirmed Smith's role in the attack and revealed information about an underlying plan to kill Smith's ex-husband, David. Spencer, Mastrionni, and others also confirmed Smith's plans.

The State charged Smith with the attempted first degree murder of Jeffers and with conspiracy to commit the first degree murder of David. It also charged Franklin with several crimes related to her involvement in these events. The State tried Smith and Franklin separately; Jeffers testified at both trials. At Smith's trial, Jeffers described Smith's involvement in the criminal conspiracy. But later, at Franklin's trial, he recanted his Smith trial testimony.

The State then charged Jeffers with perjury, to which he pleaded guilty. In his statement on plea of guilty, Jeffers said, "On or about March 29, 1993, I knowingly made

false statements during a trial while I was under oath." Jeffers testified at the Smith trial on that date.

On appeal, Smith claims defects in the charging information and in jury instruction 13, the conspiracy "to convict" instruction, violated her right to due process. She also claims that the evidence was insufficient to support her convictions. In her pro se brief and personal restraint petition, Smith presents claims of ineffective assistance of trial counsel, trial court error in admitting her confession, and newly discovered evidence in the form of Jeffers's recantation.

# I

## Defective Information

Smith contends that the information charging her with conspiracy was defective in that it failed to allege that she "took a substantial step" in pursuance of the conspiracy. To prove criminal conspiracy, the State must show that the defendant, "with intent that conduct constituting a crime be performed," agreed with one or more other persons "to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement." RCW 9A.28.040.

The information alleged that Smith was involved in "solicit[ing]" others to effect the death of David. Smith argues that solicitation is mere preparation and, thus, insufficient to prove that she took a "substantial step" in pursuance of the agreement. Although this argument is persuasive in the context of *attempt* crimes, it does not apply to a charge of conspiracy. *State v. Dent*, 123 Wn.2d 467, 869 P.2d 392 (1994). Differences in the language, focus, and purposes between the attempt and conspiracy statutes compel different definitions of "substantial step"; mere preparation is sufficient to prove conspiracy. *Dent*,

123 Wn.2d at 474, 477.[2] Thus, the information was not constitutionally defective.

## II

### DEFECTIVE "TO CONVICT" INSTRUCTION

■ Smith also claims that instruction 13, the conspiracy "to convict instruction," is defective because it does not require the jury to find an essential element of the crime — that Smith agreed with others to commit a murder. Instruction 13 requires the jury to find beyond a reasonable doubt that Smith "*agreed with Marjorie Franklin and James Jeffers to engage in or cause the performance of conduct constituting the crime of Conspiracy to Commit Murder in the First Degree.*" Although an appellate court usually will review claimed errors in jury instructions only if the appellant took exception to the instruction below, *State v. Pacheco*, 70 Wn. App. 27, 37, 851 P.2d 734 (1993), *rev'd in part on other grounds*, 125 Wn.2d 150, 882 P.2d 183 (1994), this is an issue of constitutional magnitude that Smith may raise for the first time on appeal. RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 690, 757 P.2d 492 (1988); *State v. Hanson*, 59 Wn. App. 651, 660, 800 P.2d 1124 (1990).

■ ■ In reviewing Smith's challenge, we consider the jury instructions as a whole. *State v. Schulze*, 116 Wn.2d 154, 167-68, 804 P.2d 566 (1991). Instructions that can be readily understood and are "not misleading to the ordinary mind . . . are sufficiently clear." *State v. Foster*, 91 Wn.2d 466, 480, 589 P.2d 789 (1979).

If we were to read instruction 13 in isolation, Smith's claim would have merit. But when we consider instructions 7, 12, and 13 together, it is sufficiently clear that murder is the subject crime of the conspiracy charge.

---

[2]Counsel's argument in *Dent* addressed the trial court's error in instructing the jury on the requirements to convict the defendant. We find no basis to distinguish the definition of substantial step as used in the information from that used in jury instructions.

Instruction 7 defines criminal conspiracy as requiring the *"intent that conduct constituting a crime be performed"* and an agreement *"to engage in or cause the performance of such conduct."* Instruction 12 defines murder in the first degree. The instructions, viewed in their entirety, can be readily understood, are not misleading, and were adequate to advise the jury of the elements of conspiracy.

## III

### RECANTATION

In her personal restraint petition, Smith claims that she is entitled to a new trial because of Jeffers's recantation.

■ As Jeffers's recantation occurred after trial, it is a form of newly discovered evidence. The general rule regarding reconsideration of a judgment based on newly discovered evidence is set forth in CrR 7.8(b). The defendant must move the trial court for a new trial within one year of the final judgment, subject to certain statutory exceptions. CrR 7.8(b).

Smith did not so move. Although RAP 7.2(e) allows a party, notwithstanding an appeal, to make any timely postjudgment motion authorized by the civil or criminal rules, including a motion for new trial under CrR 7.8, Smith instead seeks relief pursuant to a personal restraint petition. Relief by means of a personal restraint petition is available where "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government. . . ." RAP 16.4(c)(3).

■ Newly discovered evidence that a key witness perjured himself, if true, may constitute a material fact. *State v. Rolax*, 84 Wn.2d 836, 838, 529 P.2d 1078 (1974), *overruled on other grounds*, *Wright v. Morris*, 85 Wn.2d

899, 540 P.2d 893 (1975). Therefore, in the interest of justice, we consider this issue pursuant to RAP 16.4(c)(3).[3]

■ Where a defendant is convicted solely on the basis of a now recanting witness's testimony, a trial court's denial of a new trial is an abuse of discretion. *Rolax*, 84 Wn.2d at 838. However, where independent evidence corroborates the recanting witness's testimony, the decision whether to grant a new trial lies within the sound discretion of the trial court. *State v. Rhinehart*, 70 Wn.2d 649, 424 P.2d 906, *cert. denied*, 389 U.S. 832 (1967); *State v. Wynn*, 178 Wash. 287, 34 P.2d 900 (1934); *State v. Landon*, 69 Wn. App. 83, 848 P.2d 724 (1993); *State v. York*, 41 Wn. App. 538, 543, 704 P.2d 1252 (1985).

■ With regard to the attempted murder charge, Jeffers testified to the attack upon himself. With regard to the conspiracy, he testified that Marjorie Franklin was willing to pay $500 to hire someone to kill David; that Smith sent him a letter requesting his help in getting rid of David; and that he and Smith discussed finding a "hit man" in Reno to kill David. There was independent evidence corroborating this testimony, including Jeffers's excited utterances following his shooting, the letter Smith sent Jeffers along with its envelope addressed to Jeffers, and the testimony of five witnesses: Reneé Spencer, Randall Dills, Stanley Oathes, Charles Gulickson and Sean Ford. Nonetheless, where we have a recantation in open court and a guilty plea to perjury for the challenged testimony, we cannot say as a matter of law that the recantation was not material. Thus, we must remand the

---

[3]CrR 7.8 contemplates that motions for new trial will be considered by the superior court, which of course is uniquely positioned to evaluate whether so-called newly discovered evidence justifies granting a new trial in light of the testimony presented during trial. We note, however, that had Smith filed a motion for new trial in superior court rather than filing her personal restraint petition with this court, the trial court would have had authority to transfer the motion to this court for consideration as a personal restraint petition. CrR 7.8(c)(2). Such a transfer should not be automatic, but may be appropriate when, for example, a new trial motion raises legal issues only and does not require factual determinations that are the province of the trial court.

matter to the trial court for a reference hearing and decision regarding materiality. *Rolax*, 84 Wn.2d at 838-39.

■ We discuss the appropriate scope and purpose of the remand hearing in some detail to clarify apparent differences among the Divisions of this Court regarding the trial court's role in reviewing a recanting witness's credibility. The general objective of the remand hearing is to determine whether the recantation merits a new trial. The more specific question is whether the recantation evidence is material, that is, would it probably cause the trier of fact at a new trial to reach a different outcome. *State v. D.T.M.*, 78 Wn. App. 216, 896 P.2d 108 (1995); *see* RAP 16.4. In making this determination the trial court must consider the recantation in the context of the other evidence of the crime and in light of the circumstances surrounding the recantation. *See Rolax*, 84 Wn.2d 836; *State v. Eder*, 78 Wn. App. 352, 361, 899 P.2d 810 (1995). The question is not whether the trial court believes the recanting witness but whether the recantation has such indicia of reliability or credibility as to be persuasive to a reasonable juror if presented at a new trial.

We do not believe that the above approach differs in substance from those decisions that direct the trial court to determine if the recantation is "true," *Eder*, 78 Wn. App. at 355, or to determine credibility, *D.T.M.*, 78 Wn. App. at 221. Rather, the directions in the above cited cases appear to be an abbreviated way of expressing the same concept, one that derives from *Rolax*, the only Supreme Court case directly on point.

In *Rolax*, the record was inadequate to determine whether the recanting witness's trial testimony was the sole support for the conviction. *Rolax*, 84 Wn.2d at 838. The *Rolax* court remanded the issue with directions to the trial court to "determine whether the testimony was, in fact, perjured and, if so, whether the jury's verdict was likely to be influenced thereby." *Rolax*, 84 Wn.2d at 838.

Relying on the phrase, "determine whether the testimony was, in fact, perjured," Divisions I and III have

directed the trial court to evaluate the credibility of the witness, *D.T.M.*, 78 Wn. App. at 221, and to determine the truthfulness of the recantation, *Eder*, 78 Wn. App. at 355. By contrast, the Division II *York* court held that it was inappropriate for a trial court to sit as a thirteenth juror, determining the credibility of a recanting witness. *York*, 41 Wn. App. at 545.

The recanting witness's testimony in *York* clearly was the sole evidence supporting York's conviction. The *York* court affirmed the trial court's refusal to determine if the recanting witness perjured herself and its grant of a new trial. *York* is, of course, distinguishable in that Jeffers's testimony was not the sole evidence supporting Smith's conviction. Further, we understand *York*'s reference to the "thirteenth juror" as an admonition that the trial court must evaluate the new evidence — here the recantation and surrounding circumstances — using an objective standard. In other words, the trial court must not decide the matter based on its subjective determination of the recanting witness's truthfulness; rather, it must decide whether the recantation would be persuasive to a reasonable juror charged with deciding guilt beyond a reasonable doubt.

We agree with this concern. If on remand the trial court determines that the evidence of the recantation and surrounding circumstances, viewed in conjunction with the other independent corroborating evidence of guilt, would probably change the outcome at a new trial, such evidence is material. In that event, the trial court must vacate the judgment of conviction and sentence on the relevant count and grant Smith a new trial. On the other hand, if the trial court determines that, even with the recantation evidence, the outcome of a new trial probably would not change, it may exercise its discretion to deny a new trial.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN and HOUGHTON, JJ., concur.

Reconsideration denied February 29, 1996.

Review granted at 129 Wn.2d 1019 (1996).