# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

BY_____
DEPUTY

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43987-5-II |
| Respondent, | Consolidated with: |
| v. | |
| JASON ANTHONY FITZGERALD, | No. 45047-0-II |
| | ORDER GRANTING MOTION FOR RECONSIDERATION AND AMENDING OPINION IN PART |
| Appellant. | |

Appellant Jason Fitzgerald has moved for reconsideration of the opinion issued by this court on June 17, 2014. After due consideration, we grant the motion and amend the opinion in part as follows.

On page 15 of the opinion, we insert the following paragraph to the end of section B. INEFFECTIVE ASSISTANCE OF COUNSEL:

> Fitzgerald also argues that he received ineffective assistance of counsel because counsel failed to object when the prosecutor asked one question about the effect of the burglary on JE. Assuming, without deciding, that counsel's performance was deficient for failing to object to the testimony, Fitzgerald has failed to meet his burden to show prejudice. Fitzgerald argues that there is a reasonable probability that the result of the trial would have differed because the testimony was an appeal to the jury's emotions. We disagree. Here, the jury was specifically instructed not to let their "emotions overcome [their] rational thought process" and to decide the case on the fact and the law rather than "sympathy, prejudice, or personal preference." CP at 23. We presume that juries follow the court's instructions. *State v. Weber*, 99 Wn.2d 158, 166, 659 P.2d 1102 (1983). While we recognize that an appeal to passion and prejudice in some circumstances could be powerful enough that instructions such as these may not be sufficient to cure the impropriety, that is not the case here. Accordingly, Fitzgerald has failed to meet his burden to demonstrate prejudice, and his ineffective assistance of counsel claim must fail.

No. 43987-5-II

We do not amend any other portion of the opinion or the result.

It is **SO ORDERED.**

DATED this _5th_ day of _August_, 2014.

_____
Lee, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Maxa, J.

2

FILED
COURT OF APPEALS
DIVISION II

2014 JUN 17 AM 8: 35

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43987-5-II |
| Respondent; | |
| v. | Consolidated with: |
| | No. 45047-0-II |
| JASON ANTHONY FITZGERALD, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Jason Anthony Fitzgerald guilty of second degree burglary, attempted residential burglary, and second degree theft. Fitzgerald appeals, arguing that the prosecutor committed misconduct during closing argument, and he received ineffective assistance of counsel because defense counsel failed to object to the prosecutor's closing arguments. Fitzgerald also argues that the trial court violated his right to a public trial and his right to be present by allowing the attorneys to exercise peremptory challenges at a sidebar conference. After filing his direct appeal, Fitzgerald, pro se, filed a CrR 7.8 motion which the trial court denied. He appealed and a commissioner of this court consolidated Fitzgerald's appeals. We affirm Fitzgerald's convictions and the trial court's order denying Fitzgerald's CrR 7.8 motion.

FACTS

Levi Thompson lived in a house on Summit Lake Road with his girlfriend, Amanda Easterday, and Easterday's son, JE.[1] On the morning of April 5, 2012, JE ran into Thompson and Easterday's room yelling, "We are being robbered. We are being robbered." 1 Report of Proceedings (RP) at 110. Thompson opened the curtains and saw one man pulling a tarp over the back of a truck and another man running toward the truck from the back of the house. One of the men got in the driver's side of the truck and the other man got into the passenger side of the truck. Thompson also saw his generator in the back of the truck. Thompson immediately called the police and gave them a detailed description of the truck and the generator in the back of the truck.

At 9:14 AM Thurston County Sheriff's Sergeant James Dunn, along with seven other officers, responded to a call reporting a burglary in progress at Thompson's house. The dispatcher provided the description of the truck to all seven officers who responded to the call. Sometime between 9:25 AM and 9:39 AM, Thurston County Sheriff's Deputy Thomas Cole, observed a truck matching the description of the suspect truck. Cole performed a felony, or high-risk, traffic stop. Responding deputies arrested the truck's three occupants, Fitzgerald, Ty Martin, and Michael Cairns.

Sergeant Dunn brought Thompson to the scene of the arrest. Thompson identified Martin and Cairns as the two men he saw getting into the truck. Thompson also identified Fitzgerald by name. In addition, Thompson identified many pieces of property in the truck as his property,

---

[1] Because JE is a minor, his initials are used to protect his privacy.

including the generator. There were also several items in the truck that Thompson did not identify as his property, including masks, gloves, and tools.

The State charged Fitzgerald with second degree burglary, attempted residential burglary, and second degree theft. The State also charged Fitzgerald with an aggravator because people were in the home at the time of the attempted burglary.

A jury trial began on September 19, 2012. Jury voir dire was conducted in open court, on the record, and with Fitzgerald present with his attorney. After completing voir dire, the trial court held a side bar with the attorneys to complete jury selection. After the sidebar, the trial court made the following record:

> I want to memorialize the sidebar we had just before the jury selection preemptories were exercised. There was a challenge for cause of Juror No. 13 by [defense counsel]. It was not objected to by the State, and based upon what I heard as an answer by Juror 13 that he already made up his mind in this case, he was excused for cause.

1 RP at 26-27.

During trial, Sergeant Dunn, Deputy Cole, and Thompson testified to the above facts. Thompson testified that he knew Fitzgerald because Fitzgerald was a friend of Thompson's cousin, Josh Saunders. Fitzgerald had also been a tenant in a property Thompson helped manage, but Fitzgerald was evicted when he got significantly behind on rent. A couple days prior to the burglary, Saunders was at Thompson's home. While Saunders was at the home, he asked Thompson several questions about when he went to work, who he worked for, and what kind of property Thompson kept in his shop. Saunders also spent time wandering around the property.

3

The State's theory of the case was that Fitzgerald was an accomplice in the burglary because he was in the truck and could have been the driver, he was the only one of the three suspects that was connected to Thompson, and he could have had knowledge about what property was in the home. In closing argument, the prosecutor stated:

> Well, I'm going to talk a little bit more about it, but I came up with the only thing I could really think of, which is kind of something my mom used to say when I was younger, birds of a feather flock together, and she usually meant that to mean choose your friends wisely, because the people you hang out with usually have common interests, and if those interests aren't good, you're going to be involved in those. So I want you to have that kind of mind set about these three individuals.

2 RP at 304. The prosecutor illustrated this point with a slide that showed all three suspects, in handcuffs, with the caption "BIRDS OF A FEATHER FLOCK TOGETHER" and the scales of justice in the background. Suppl. Clerk's Papers (CP) at 67. The prosecutor also argued that any argument Fitzgerald tried to make that he was not involved in the burglary was contrary to common sense. Specifically, the prosecutor argued that (1) burglars would not bring a person uninvolved in the crime with them to be a witness to a burglary, and (2) burglars who had been seen and were trying to flee from the police would not stop to pick up some person on the side of the road.

During closing argument, Fitzgerald's defense counsel mentioned the "birds of a feather" analogy several times:

> Now, let's go to the real crux of this whole case, which is the burglary in the second degree, and as I told you, I'm not disputing that Mr. Cairns and Mr. Martin committed a burglary in the second degree, but [the prosecutor] told you the State's case and the basis for this whole case right at the beginning he put in big yellow letters under the photographs of the three individuals, "Birds of a feather flock together."

4

Don't look though your instructions now. I'm being facetious. You're not going to find that as a jury instruction, birds of a feather flock together. . . .

. . . .

. . . Talk about it amongst yourself and see what you remember, but that is the way the State does it's [sic] best to twist things in the way that they think something happened. They think something is happenings, birds of a feather, they are all together, must be guilty, and then they start sort of edging the evidence the way they want it to show.

. . . .

I submit to you that there is some prejudice in this case. Perhaps it's natural. Perhaps it's natural for the police and the prosecutors to think that if somebody is together with a couple of bad birds, he must be a bad bird too.

2 RP at 332, 337, 338.

The jury found Fitzgerald guilty of second degree burglary, attempted residential burglary, and second degree theft. The jury also found that the attempted residential burglary was aggravated because the victim or victims were present when the crime was committed. The trial court sentenced Fitzgerald to 89 months total confinement. Fitzgerald appeals.

After the court entered Fitzgerald's judgment and sentence, Fitzgerald filed a CrR 7.8 motion for a new trial. Fitzgerald argued that he was entitled to a new trial based on newly discovered evidence; specifically, he claimed the affidavits from three witnesses were newly discovered evidence. He submitted an affidavit from Martin absolving him of involvement with the burglary and two affidavits from people who stated that he had been with them that morning and they dropped Fitzgerald off in the Summit Lake Area, near the Thompson's house, around 9 AM. The trial court denied Fitzgerald's motion stating, "The defendant has not meet [sic] the high burden for newly discovered evidence. The evidence is merely testimony that was known to the defense before trial." CP (No. 45047-0-II) at 72. Fitzgerald appealed, and a commissioner of this court consolidated Fitzgerald's two appeals.

5

ANALYSIS

A.   PROSECUTORIAL MISCONDUCT.

To prevail on a prosecutorial misconduct claim, a defendant must show that the prosecutor's conduct was improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). To show prejudice, a defendant must show a substantial likelihood that the misconduct affected the verdict. *Thorgerson*, 172 Wn.2d at 442-43. In analyzing prejudice, we do not look at the comment in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury. *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008).

A defendant who fails to object to the prosecutor's improper act at trial waives any error, unless the act was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Thorgerson*, 172 Wn.2d at 443. In this instance, a defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012). Thus, the focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remark. *Emery*, 174 Wn.2d at 762.

In closing argument, prosecutors are afforded wide latitude to draw and express reasonable inferences from the evidence. *State v. Reed*, 168 Wn. App. 553, 577, 278 P.3d 203, *review denied*, 176 Wn.2d 1009 (2012). "A prosecutor may make use of graphics in closing argument to highlight relevant evidence . . . but prosecutorial misconduct may deprive a

defendant of his constitutional right to a fair trial." *State v. Hecht,* ___ Wn. App. ___, 319 P.3d 836, 840 (2014).

Fitzgerald argues that four instances of prosecutorial misconduct during closing argument require reversal: (1) the prosecutor's use of the "birds of a feather" analogy and the corresponding slide, (2) the prosecutor improperly appealed to the jury's passion and prejudice by stating the JE was scared by the burglary, (3) the prosecutor trivialized the burden of proof, and (4) the prosecutor improperly disparaged defense counsel. Although the prosecutor's use of the "birds of a feather" analogy and the corresponding slide was improper and we do not condone it, Fitzgerald fails to meet his burden to show that the prosecutor's conduct resulted in an enduring prejudice that could not be cured by an instruction. The prosecutor's other conduct was not improper.

1. "Birds of a Feather" Analogy and Slide

Fitzgerald argues that the "birds of a feather" analogy violated his right to a fair trial because it urged the jury to convict him on improper grounds. Specifically, Fitzgerald argues that the prosecutor urged a conviction by arguing guilt by association. Fitzgerald also argues that the prosecutor committed misconduct by presenting evidence that was not admitted at trial (i.e., an altered and captioned photograph). Fitzgerald fails to meet his burden to demonstrate prosecutorial misconduct.

In *In re Personal Restraint of Glasmann,* 175 Wn.2d 696, 705, 286 P.3d 673 (2012), our Supreme Court reversed the defendant's conviction based on slides that the prosecutor used at closing argument, many of which were photos altered with captions or phrases. The court noted that it is improper to submit evidence to the jury that was not admitted at trial. *Glasmann,* 175

Wn.2d at 705. The State attempts to distinguish *Glasmann* by arguing that the photos were not altered because the caption was on the slide, below the photograph, rather than on the photographs themselves. This argument is not well-taken.

In *Glasmann*, the court noted "[t]here certainly was no photograph in evidence that asked 'DO YOU BELIEVE HIM?'" 175 Wn.2d at 706. Likewise, here, there was no photograph in evidence noting "BIRDS OF A FEATHER FLOCK TOGETHER." Nor was there a photograph with all three suspects together, in handcuffs, admitted into evidence. While there may be times when minor alterations to evidence may be helpful to highlight specific details for the jury, it is ill-advised to alter evidence to create imagery not admitted into evidence that is specifically designed to influence the jury's deliberations. *See Glasmann*, 175 Wn.2d at 706. Nothing in *Glasmann* indicates the court intended its holding to be read as narrowly as the State suggests.[2]

Prosecutors represent the State as quasi-judicial officers and they have a "duty to subdue their courtroom zeal for the sake of fairness to a criminal defendant." *State v. Fisher*, 165 Wn.2d 727, 746, 202 P.3d 937 (2009). "A '[f]air trial' certainly implies a trial in which the attorney representing the state does not throw the prestige of his public office . . . and the expression of his own belief of guilt into the scales against the accused.'" *State v. Monday*, 171 Wn.2d 667,

---

[2] We also note that *Glasmann* is not as broad as Fitzgerald seems to suggest. At times, Fitzgerald seems to suggest that any time the State uses a slide that is prejudicial to the defendant misconduct has occurred. *Glasmann* stands for no such thing. In fact, *Glasmann* agrees that technology certainly has its place in the courtroom. However, using technology crosses the line into prosecutorial misconduct when the prosecutor violates the well-established principles of appropriate conduct (e.g., using evidence that was not admitted at trial, abusing their role as a quasi-judicial officer, offering improper opinions, etc.) and causes an enduring, incurable prejudice. Accordingly, the defense should focus on these principles rather than the use of technology during a closing argument.

677, 257 P.3d 551 (2011) (alterations in original) (quoting *State v. Case*, 49 Wn.2d 66, 71, 298 P.2d 500 (1956)). Here, the prosecutor violated the duty to ensure a fair trial for the defendant.

Fitzgerald asserts that the prosecutor used the slide to improperly argue that Fitzgerald was guilty by association. The prosecutor's *words* in closing argument did not argue guilt by association. But that fact does not excuse the prosecutor from using a visual aid which clearly illustrates that concept. Looking at the slide itself, the only reasonable interpretation that this court can see is the implication that Fitzgerald is guilty because he is directly connected with the other two defendants. The prosecutor even juxtaposed the image with the scales of justice—throwing the prestige of his office behind the opinion that Fitzgerald must have been involved in this crime because he was with the other defendants. This is particularly concerning when the State's entire case is based on a theory of accomplice liability.

The prosecutor's duty in this case was to apply the facts to the law. Based on the facts of this case, the prosecutor should have been more than capable of performing this task without resorting to using an illustration that serves no other purpose than to leave the jury with an image depicting the defendant in handcuffs next to the other suspects directly involved in the crime. The use of the image in this case is clearly improper conduct.

However, Fitzgerald did not object to the prosecutor's conduct during closing argument. As a result, he must establish that the prosecutor's misconduct was so prejudicial that it caused an enduring prejudice that could not have been cured by a timely objection.

Because the prosecutor's slide was improper, we must presume that, had Fitzgerald objected prior to the prosecutor's closing argument, any reasonable judge would have excluded the slide. Furthermore, had Fitzgerald objected during closing argument any prejudice could

have been mitigated by the trial court instructing the jury to disregard the slide and instructing the jury as to the proper standards for accomplice liability. *State v. Hanna*, 123 Wn.2d 704, 711, 871 P.2d 135, *cert. denied*, 513 U.S. 919 (1994) (We presume juries follow the court's instructions.).

In addition, the prosecutor himself mitigated some of the prejudice caused by the use of the improper image. The prosecutor did not use the image repeatedly throughout closing argument, and his reference to the "birds of a feather" analogy was brief and not pervasive throughout his argument. The prosecutor also repeatedly referenced the appropriate law regarding accomplice liability and applied the facts to the law in a manner that illustrated an acceptable argument supporting Fitzgerald's guilt as an accomplice. Therefore, the jury was, overall, given a complete and proper view of the law and facts of this case.

The prosecutor's conduct was improper, and we do not condone it. However, given the specific facts of this case, Fitzgerald has failed to meet the heightened standard of establishing an enduring prejudice that could not have been cured by a timely objection and instructions to the jury.

2. Appeal to the Jury's Passion or Prejudice

Fitzgerald argues that the prosecutor improperly appealed to the jury's passion and prejudice by urging a verdict based on the burglary's effect on JE. At trial, Thompson testified:

> Yeah, [JE] doesn't like to go to bed anymore. We moved his bed away from the windows, and he constantly asks us if he can sleep in our room with us, and we tell him it's all good, we're going to put the dog under your bed and everything, and it will be all right, and he still comes out and in the middle of the night sometimes around 10:00, 11:00, sometimes midnight.
>
> . . . .

> It was a change. Normally, I would tell him lights out at 9:30. You have
> to go to school in the morning, and he normally wouldn't come out, unless it was
> for water or the bathroom.

1 RP at 118. During closing argument, the prosecutor made one isolated comment regarding JE:

> During the commission of the attempted residential burglary, three people
> were sleeping inside. As you heard, [JE] has been traumatized by these events.

2 RP at 317. Defense counsel did not object.

Fitzgerald argues that the prosecutor's comment urged the jury to convict Fitzgerald based on sympathy for JE. Fitzgerald's argument is not supported by the record.

A prosecutor may not make statements that are unsupported by the evidence or invite the jurors to decide a case based on emotional appeals to their passions or prejudices. *State v. Jones*, 71 Wn. App. 798, 808, 863 P.2d 85 (1993). It is clear that the prosecutor's comment was based on evidence in the record. Here, the prosecutor made a single comment regarding the effect of the burglary on JE. The bulk of the prosecutor's argument was based on what reasonable inferences the jury could and should make based on all the circumstantial evidence in the case. There is no indication that the prosecutor urged the jury to convict based on the effect the burglary had on JE. Therefore, the prosecutor's comment was not improper.

3. Trivializing the State's Burden of Proof

Fitzgerald alleges that the State improperly minimized its burden of proof by equating beyond a reasonable doubt with common sense. Specifically, Fitzgerald points to a specific section of the prosecutor's argument where the prosecutor allegedly equates the certainty required for conviction to the certainty required to make every day decisions:

> If someone had come up to you and told you, you know, my house just got
> burglarized, the cops were there within ten minutes, they pulled over the truck

with three guys in it and all of the stolen property, wouldn't you almost automatically say, yeah, all three of those guys, yeah, they must have burgled your house, because that makes sense.

2 RP at 322. Defense counsel did not object.

A prosecutor is a quasi-judicial officer of the court, charged with the duty of ensuring that an accused receives a fair trial. *State v. Boehning*, 127 Wn. App. 511, 518, 111 P.3d 899 (2005). A prosecutor's argument misstating, minimizing, or trivializing the law regarding the burden of proof can be improper. *State v. Johnson*, 158 Wn. App. 677, 684-85, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013 (2011).

Here, the prosecutor's comments were made in the context of explaining circumstantial evidence and common sense inferences to the jury. The prosecutor's entire theory of the case was based on circumstantial evidence and required the jury to infer that Fitzgerald was an accomplice to the burglary because it was the only reasonable inference to be drawn from the evidence. The prosecutor's argument is entirely consistent with the law. The jury was instructed:

> The evidence that has been presented to you may be either direct or circumstantial. The term "direct evidence" refers to evidence that is given by a witness who has directly perceived something at issue in this case. The term "circumstantial evidence" refers to evidence from which, based on your common sense and experience, you may reasonably infer something that is at issue in this case.

CP at 24 (Instruction No. 5). Thus, the prosecutor's remarks were proper within the context of the entire argument.

4. Disparaging Defense Counsel

Finally, Fitzgerald argues that the prosecutor improperly disparaged defense counsel by implying that defense counsel was "using deception to prevent the jury from getting at the truth." Br. of Appellant at 19. During rebuttal argument the prosecutor argued:

> When you look at [the whole picture], you can see for miles. You can see everything, you can see everything that's on the horizon, everything that's coming at you, but if someone puts something in front of you and said, no, just focus at this, look to the left, look to the right, you can't see everything. They put up these road blocks, because they don't want you to see what is there. They don't want you to see what you can see when you use your common sense.
>
> . . . .
>
> Well, [defense counsel] says, well, the [sic] maybe [Fitzgerald] wasn't even there. So, okay, the two burglars decide as they were fleeing, let's pick up [Fitzgerald], who just happens to be out walking in the Summit Lake area at 9 o'clock in the morning. Does that make sense?
> It makes no sense, because what [defense counsel] has asked you to do and what [Fitzgerald] hopes you do is leave your common sense out here and don't take it back there.

2 RP at 341-42, 347. Defense counsel did not object.

It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn counsel's integrity. *Thorgerson*, 172 Wn.2d at 451. For example, a prosecutor may commit misconduct by accusing defense counsel of engaging in "sleight of hand" or using terms such as "bogus" and "deception." *Thorgerson*, 172 Wn.2d at 451-55. However, in rebuttal, improper remarks are not grounds for reversal if they were "invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995).

13

Here, the prosecutor's comments were made during rebuttal argument and were in direct response to defense counsel's argument. During closing argument, defense counsel argued that the inferences the prosecutor argued did not comport with the evidence, and more specifically, that the prosecutor and the police arrested and charged Fitzgerald solely because they improperly assumed he must be guilty because he was with Martin and Cairns. Defense counsel went so far as to accuse the prosecutor of relying on his own prejudice when charging and trying Fitzgerald. In response, the prosecutor argued that defense counsel was urging the jury to look at specific things out of context, and when the jury looked at the entire case as a whole, the prosecutor's theory of the case was the only theory that makes sense. The prosecutor's comments were not improper and were in response to defense counsel's closing argument.[3]

## B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Fitzgerald argues that he received ineffective assistance of counsel because of his defense counsel's failure to object to the prosecutor's statements during closing argument. As explained above, the prosecutor's statements regarding JE, the burden of proof, and defense counsel were not improper; therefore, defense counsel was not ineffective for failing to object to them. Furthermore, defense counsel's failure to object to the prosecutor's use of the "birds of a feather" analogy and the corresponding slide was a legitimate trial tactic and cannot be the basis for an ineffective assistance of counsel claim.

---

[3] Fitzgerald also argues that the cumulative effect of the prosecutor's misconduct denied him a fair trial. But, because we hold that there was only one instance of improper conduct, there can be no cumulative effect of the prosecutor's improper conduct. Accordingly, we do not address Fitzgerald's argument that there was cumulative prejudice any further.

14

To prevail on an ineffective assistance of counsel claim, Fitzgerald must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To rebut this presumption, a defendant bears the burden of establishing the absence of any conceivable legitimate trial tactic explaining counsel's performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To establish prejudice, a defendant must show a reasonable probability that the outcome of the trial would have differed absent the deficient performance. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). If an ineffective assistance of counsel claim fails to support a finding of either deficiency or prejudice, it fails. *Strickland*, 466 U.S. at 697.

Here, the defense attorney repeatedly referenced the prosecutor's "birds of a feather" analogy in his own closing argument. Defense counsel relied on the "birds of a feather" analogy to undermine the prosecutor's theory of the case; specifically, that the entire case rested on the presumption that Fitzgerald must be involved because he was with Martin and Cairns. Using the prosecutor's own argument to undermine the prosecutor's theory of the case is a legitimate trial tactic. Thus, Fitzgerald cannot meet his burden to prevail on his ineffective assistance of counsel claim.

C.     PUBLIC TRIAL RIGHT

Fitzgerald argues that the trial court violated his right to a public trial. Fitzgerald asserts that his right to a public trial was violated when the trial court allowed the attorney to complete jury selection by completing jury selection during a side bar. Allowing challenges to jurors during jury selection to be held during a side bar does not violate a defendant's right to a public trial. *State v. Love*, 176 Wn. App. 911, 309 P.3d 1209 (2013). Accordingly, the trial court did not violate Fitzgerald's right to a public trial.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). This court reviews alleged violations of the public trial right de novo. *Wise*, 176 Wn.2d at 9. The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). In *Sublett*, our Supreme Court adopted a two-part "experience and logic" test to address this issue: (1) whether the place and process historically have been open to the press and general public (experience prong), and (2) whether the public access plays a significant positive role in the functioning of particular process in question (logic prong). 176 Wn.2d at 73. Both questions must be answered affirmatively to implicate the public trial right. *Sublett*, 176 Wn.2d at 73.

Fitzgerald argues that the trial court violated his public trial right because the trial court conducted the peremptory challenges portion of jury selection during a sidebar conference at the clerk's station. Division Three of this court addressed this exact issue in and held that neither "prong of the experience and logic test suggests that the exercise of cause or peremptory

16

challenges must take place in public." *Love*, 176 Wn. App. at 920. The public trial right does not attach to the exercise of challenges during jury selection. *Love*, 176 Wn. App. at 920.

We recently adopted the reasoning of *Love* and held that experience and logic do not suggest that exercising peremptory challenges at the clerk's station implicates the public trial right. *State v. Dunn*, ___ Wn. App. ____, 321 P.3d 1283, 1285 (2014). Accordingly, the trial court did not violate Fitzgerald's public trial right, and Fitzgerald's challenge fails.

## D. RIGHT TO BE PRESENT

Fitzgerald also argues that the trial court's jury selection procedure violated his right to be present. Here, Fitzgerald was present during all the questioning of jurors. At the end of the jury voir dire, the trial court stated, "[C]ounsel, could I ask you at this time to approach me at sidebar." RP (Jury Voir Dire) at 71. Because Fitzgerald was present in the courtroom, it is unclear whether Fitzgerald approached with his counsel during sidebar. Generally, this court does not address issues that rely on facts outside the record on direct appeal. *McFarland*, 127 Wn.2d at 335. Because there is no evidence in the record confirming that Fitzgerald was not present at the side bar, the record is insufficient to review Fitzgerald's argument that the trial court violated his right to be present.

## E. CrR 7.8 MOTION—NEWLY DISCOVERED EVIDENCE

Fitzgerald filed a pro se motion for relief from judgment under CrR 7.8, alleging that newly discovered evidence required the trial court to vacate his judgment and sentence and order a new trial. Under CrR 7.8(b)(2), a defendant may obtain relief from judgment based on "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5." This court reviews a trial court's ruling on a CrR 7.8

17

motion for an abuse of discretion. *State v. Martinez*, 161 Wn. App. 436, 440, 253 P.3d 445, *review denied*, 172 Wn.2d 1011 (2011). A trial court abuses its discretion when it exercises its discretion in a manner that is based on unreasonable or untenable grounds. *Martinez*, 161 Wn. App. at 440.

There are five requirements that must be met for newly discovered evidence to warrant a new trial. *State v. Eder*, 78 Wn. App. 352, 357, 899 P.2d 810 (1995), *review denied*, 129 Wn.2d 1013 (1996). The evidence must (1) be such that it would probably change the result of the trial, (2) be discovered after the trial, (3) be such that it could not have been discovered before the trial through the exercise of due diligence, (4) be material and admissible, and (5) not be cumulative and impeaching. *Eder*, 78 Wn. App. at 357. Absence of any of the five factors is sufficient to deny a new trial. *Eder*, 78 Wn. App. at 357. "'[D]efendants seeking postconviction relief face a heavy burden and are in a significantly different situation than a person facing trial.'" *State v. Gassman*, 160 Wn. App. 600, 609, 248 P.3d 155 (2011) (alteration in original) (quoting *State v. Riofta*, 166 Wn.2d 358, 369, 209 P.3d 467 (2009)), *review denied*, 172 Wn.2d 1002 (2011).

The State argues that Fitzgerald cannot meet his burden to show that the affidavits were newly discovered evidence (i.e., that he could not have discovered them before the trial through the exercise of due diligence). We agree

Fitzgerald relies on *State v. Slanaker*, 58 Wn. App. 161, 791 P.2d 575, *review denied*, 115 Wn.2d 1031 (1990), to argue that the affidavits were newly discovered and that they could not have been discovered with due diligence even though he knew of the witnesses' possible existence. In *Slanaker*, the defendant presented an alibi offense alleging that he was playing poker with four people during the crime. The defendant's friend testified that they were playing

18

poker, but the defendant was unable to locate the two other members of the game. The two other witnesses contacted the defendant after his conviction and submitted affidavits corroborating the defendant's alibi and explaining why the defendant could not locate them earlier. *Slanaker*, 58 Wn. App. at 162-63. The trial court made a specific finding that the defendant exercised due diligence when trying to locate the witnesses and granted the defendant's motion. *Slanaker*, 58 Wn. App. at 165. The State did not challenge the trial court's finding, and the reviewing court considered it a verity on appeal. *Slanaker*, 58 Wn. App. at 165. The court held that "[a] previously known witness'[s] testimony can be newly discovered when that witness could not be located before trial with the exercise of due diligence." *Slanaker*, 58 Wn. App. at 166. The court relied on the trial court's unchallenged finding that the defendant exercised due diligence when holding that the defendant met his burden under CrR 7.8.

However, because the appellate court relied on the trial court's unchallenged finding of fact, *Slanaker* does not actually address the issue we must resolve. The holding in *Slanaker* is limited to establishing that testimony can be considered "newly discovered" even if the existence of the witness is known at the time of trial. *Slanaker* does not establish a standard for what constitutes due diligence sufficient to meet the requirement of CrR 7.8. Here, the trial court did not make a specific finding that Fitzgerald acted with due diligence; therefore, we must examine the record to determine whether evidence in the record supports a finding that Fitzgerald failed to exercise due diligence in attempting to contact the witnesses. Although the affidavits submitted by Fitzgerald explain why he may have had difficulty finding the witnesses, there is no evidence submitted that documents what efforts were made to attempt to locate them.

19

Fitzgerald alleges that Martin's testimony could not have been discovered with due diligence because there was a no contact order prohibiting him from contacting Martin. But there was nothing prohibiting Fitzgerald's attorney from attempting to contact Martin, or from requesting that the trial court modify the no contact order such that Martin could be interviewed for his testimony. There is no evidence establishing that Fitzgerald attempted to do any of these things or that they would have been unsuccessful. Therefore, Fitzgerald has failed to meet his burden to show that Martin's testimony could not have been discovered with the exercise of due diligence.

Fitzgerald also alleges that he could not have discovered Angel Yarbrough's testimony because she moved and changed her name, and he could not have discovered John Balcom's testimony because he did not know Balcom's last name. But, Fitzgerald has not demonstrated that he made any effort to actually locate the witnesses. To the extent that Fitzgerald appears to argue that he attempted to investigate the witnesses but his lawyer refused to do so, there is no evidence supporting these allegations in the record. Accordingly, the record does not present facts establishing that Fitzgerald acted with due diligence in attempting to locate the witnesses during trial, and the trial court did not err by denying his CrR 7.8 motion.

No. 43987-5-II/
No. 45047-0-II

We affirm Fitzgerald's convictions and the trial court's order denying his CrR 7.8 motion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Bjorgen, A.C.J.

Maxa, J.

21